UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

JASON DOHERTY                                   :
                                                :
                          Plaintiff,            :
                                                :           18-cv-10898 (NSR)
          - against -                           :
                                                :
PATRICIA BICE, individually and as Dean of      :
Student Affairs for Purchase College, State     :
University of New York; JARED STAMMER,          :
individually and as Associate Dean for Student  :
Affairs for Purchase College, State University of :
New York; and QUI QUI BALASCIO, individually    :
and as Associate Dean for Student Affairs for   :
Purchase College, State University of New York, :
                                                :
                          Defendants.           :

------------------------------------------------------------- X

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS

LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendants*
28 Liberty Street, 16th Floor
New York, New York 10005
(212) 416-8874

ALYSSA ANZALONE-NEWMAN
Assistant Attorney General
*Of Counsel*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ............................................................ 1

BACKGROUND ............................................................................... 2

STANDARD OF REVIEW .................................................................. 5

ARGUMENT ................................................................................... 6

I.    THE ELEVENTH AMENDMENT BARS PLAINTIFF'S § 1983 CLAIM
AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES .................................. 6

    A.  Plaintiff's Claims Against Defendants in Their Official Capacities
Must Be Dismissed ................................................................. 6

    B.  The Exception To State Employees' Eleventh Amendment Immunity
Is Inapplicable ...................................................................... 7

II.   PLAINTIFF'S § 1983 CLAIM SHOULD BE DISMISSED BECAUSE
HE FAILS TO ALLEGE A VIOLATION OF HIS DUE PROCESS RIGHTS ................ 8

III.  PLAINTIFF CANNOT SUE DEFENDANTS IN THEIR INDIVIDUAL
CAPACITIES UNDER THE AMERICANS WITH DISABILITIES ACT
BECAUSE THE ACT DOES NOT PROVIDE FOR SUCH SUITS AGAINST
STATE OFFICIALS ................................................................... 13

IV.  PLAINTIFF FAILS TO STATE A CLAIM UNDER THE AMERICANS
WITH DISABILITIES ACT ........................................................... 13

V.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ............... 14

CONCLUSION ................................................................................ 16

i

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Albert v. Carovano*,
  824 F.2d 1333 .............................................................................................9

*Alberts v. Landeau*,
  No. 09 Civ. 2162, 2011 WL 130303996 (E.D.N.Y. March 31, 2011) ...................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................5, 6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................5, 14

*Branum v. Clark*,
  927 F.2d 698 (2d Cir. 1991)..............................................................................10

*Cory v. White*,
  457 U.S. 85 (1982)...........................................................................................6

*DeMichele v. Greenburgh Cent. Sch. Dist. No. 7*,
  167 F.3d 784 (2d Cir. 1991)..............................................................................11

*Ex parte Young*,
  209 U.S. 123 (1908)...........................................................................................7

*Filetech S.A. v. France Telecom S.A.*,
  157 F.3d 922 (2d Cir. 1998)...............................................................................5

*Garcia v. Health Science Center of Brooklyn*,
  280 F.3d 98 (2d Cir. 2001)................................................................................13

*Germano v. Dzurenda*,
  2011 WL 1214435 (D. Conn. Mar. 28, 2011) ............................................... 11-12

*Gollomp v. Spitzer*,
  568 F.3d 355 (2d Cir. 2009)..............................................................................7

*Gonzalez v. City of Schenectady*,
  728 F.3d 149 (2d Cir. 2013)..............................................................................15

*Haidak v. Univ. of Massachusetts at Amherst*,
  299 F. Supp. 3d 242 (D. Mass. 2018), *aff'd in part, vacated in part, remanded
  sub nom. Haidak v. Univ. of Massachusetts-Amherst*, 933 F.3d 56 (1st Cir.
  2019) .............................................................................................................9

*Harris v. Mills*,
　　572 F.3d 66 (2d Cir. 2009)...................................................................................13

*Idaho v. Couer d' Alene Tribe*,
　　521 U.S. 261 (1997)............................................................................................7

*J.S. ex rel. N.S. v. Attica Cent. Schs.*,
　　386 F.3d 107 (2d Cir. 2004).................................................................................5

*J.S. v. T'Kach*,
　　714 F.3d 99 (2d Cir. 2013)...................................................................................8

*Jackson Nat. Life Ins. v. Merrill Lynch & Co.*,
　　32 F.3d 697 (2d Cir. 1994)...................................................................................5

*Jennings v. Rodriguez*,
　　138 S. Ct. 830 (2018)..................................................................................... 10-11

*Keitt v. New York City*,
　　882 F. Supp. 2d 412 (S.D.N.Y. 2011)....................................................................13

*Kentucky v. Graham*,
　　473 U.S. 159 (1985)............................................................................................6

*Kimel v. Fla. Bd. of Regents*,
　　528 U.S. 62 (2000)..............................................................................................6

*Kirch v. Liberty Media Corp.*,
　　449 F.3d 388 (2d Cir. 2006).................................................................................6

*Logan v. Zimmerman Brush Co.*,
　　455 U.S. 422 (1982)...........................................................................................10

*Luckett v. Bure*,
　　290 F.3d 493 (2d Cir. 2002).................................................................................5

*Madden v. Vt. Supreme Court*,
　　8 Fed. Appx. 128 (2d Cir. 2001)...........................................................................7

*Makarova v. U.S.*,
　　201 F.3d 110 (2d Cir. 2000)..............................................................................3, 5

*Malik v. Meissner*,
　　82 F.3d 560 (2d Cir. 1996)...................................................................................5

*Malley v. Briggs*,
　　475 U.S. 335 (1986)...........................................................................................15

*Mamot v. Bd. of Regents*,
　367 Fed. Appx. 191 (2d Cir. 2010) .............................................................................7

*Matthews v. Eldridge*,
　424 U.S. 319 (1976) ................................................................................................ 10-11

*Missouri v. Fiske*,
　290 U.S. 18 (1933) ..........................................................................................................6

*Morales v. New York*,
　22 F. Supp. 3d 256 (S.D.N.Y. 2014) (NSR) .......................................................6, 13, 15

*Morrissey v. Brewer*,
　408 U.S. 471 (1972) ................................................................................................ 10-11

*Papasan v. Allain*,
　478 U.S. 265 (1986) ...................................................................................................6, 14

*Pearson v. Callahan*,
　555 U.S. 223 (2009) ................................................................................................ 14-15

*Pennhurst State Sch. & Hosp. v. Halderman*,
　465 U.S. 89 (1984) ..........................................................................................................6

*Perciballi v. New York*,
　09-cv-6933, 2010 WL 3958731 (S.D.N.Y. Sept. 29, 2010) ........................................8

*Powell v. Nat'l Bd. of Med. Exam'rs*,
　364 F.3d 79 (2d Cir. 2004) ..........................................................................................13

*Quern v. Jordan*,
　440 U.S. 332 (1979) ........................................................................................................7

*Seminole Tribe v. Florida*,
　517 U.S. 44 (1996) ..........................................................................................................6

*Shipman v. New York State Office of Persons with Developmental Disabilities*,
　No. 11-cv-2780, 2012 WL 1034903 (S.D.N.Y. Mar. 26, 2012) ................................ 7-8

*Shipping Fin. Serv. Corp. v. Drakos*,
　140 F.3d 129 (2d Cir. 1998) ..........................................................................................5

*Shomo v. City of New York*,
　579 F.3d 176 (2d Cir. 2009) ...................................................................................13, 14

*Spinelli v. City of New York*,
　579 F.3d 160 (2d Cir. 2009) ........................................................................................10

*Taravella v. Town of Wolcott*,
   599 F.3d 129 (2d Cir. 2010)..........................................................................................15

*Tennessee v. Lane*,
   541 U.S. 509 (2004).....................................................................................................13

*Trotman v. Palisades Interstate Park Comm'n*,
   557 F.2d 35 (2d Cir. 1977)............................................................................................7

*Verizon Md., Inc. v. Pub. Serv. Comm'n*,
   535 U.S. 635 (2002).......................................................................................................7

*Watson v. Geithner*,
   No. 09 Civ. 6624, 2013 WL 5420932 (S.D.N.Y. Sept. 27, 2013) ...........................14

*White v. Pauly*,
   137 S.Ct. 548 (2017).....................................................................................................15

*Woods v. Rondout Valley Cent. Sch. Dist.*,
   466 F.3d 232 (2d Cir. 2006)..........................................................................................6

**CONSTITUTION**

Eleventh Amendment.............................................................................................1-2, 6-7

Fourteenth Amendment ..............................................................................................1, 4

**FEDERAL STATUTES**

42 U.S.C.
   § 1983................................................................................................................. passim

Americans with Disabilities Act Title II, 42 U.S.C.
   § 12132............................................................................................................... 1-2, 13

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(1)......................................................................................1, 3, 5, 7

Fed. R. Civ. P. 12(b)(6).........................................................................................1, 4, 5

Defendants Patricia Bice, Dean of Student Affairs, Qui Qui Balascio, Associate Dean of

Students, and Jared Stammer, former Conduct Officer for Community Standards ("Defendants")

at the State University of New York at Purchase ("Purchase College," "Purchase," or "the

College"), respectfully submit this memorandum of law in support of their motion to dismiss

Plaintiff's Amended Complaint ("the Complaint" or "Compl."), filed on March 13, 2019, pursuant

to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Jason Doherty ("Plaintiff"), a current student at Purchase College, brings this

action pursuant to 42 U.S.C. §§ 1983 ("Section 1983") and 1988, alleging a violation of his

Fourteenth Amendment right to due process, and pursuant to Title II of the Americans with

Disabilities Act, 42 U.S.C. § 12132 ("ADA"), alleging disability discrimination.  During his

freshman orientation at the College, Plaintiff was involved in an incident in which at least one

student asked him to leave their dorm room, and then called campus police.  Later that same day,

multiple students requested that "no contact orders" be implemented between them and Plaintiff,

and after hearing accounts of what transpired at the dorm room in question, Purchase's Office of

Community Standards put these orders (which stated that neither party was to contact each other)

in place.  Plaintiff later requested a review of the three no contact orders and was unsuccessful in

having them removed.  Plaintiff now alleges that the instatement of these no contact orders violated

his rights to due process and the ADA.  He seeks injunctive relief in the form of the orders being

vacated and declared void, monetary damages in excess of $100,000, and attorney's fees in excess

of $50,000.

However, as set forth below, all of Plaintiff's claims should be dismissed.  As a preliminary

matter, Plaintiff's claims for monetary damages under Section 1983 are barred by the Eleventh

Amendment to the United States Constitution.  Second, Plaintiff fails to adequately state a due process claim.  Third, to the extent that Plaintiff is suing Defendants in their individual capacity under the ADA, this is impermissible.  Fourth, Plaintiff also fails to state a substantive ADA claim. Fifth, Defendants are entitled to qualified immunity.  Sixth and finally, any of Plaintiff's claims for non-monetary relief against Defendant Stammer are barred because Plaintiff cannot successfully allege that Stammer has the necessary authority to implement such relief, as he no longer works at Purchase College.  Accordingly, Defendants' motion to dismiss should be granted in full.

## BACKGROUND[1]

On March 13, 2019, at the time of filing the Amended Complaint, Plaintiff was 19 years old and living in Westchester County, New York.  *See* Complaint, ECF Dkt. No. 17 at ¶ 3.  Plaintiff alleges that he suffers from Asperger's Syndrome, and "has been classified as a disabled student," *id.* at ¶ 7, although he does not allege where, when, or by whom this classification took place.

Prior to attending Purchase College, Plaintiff was a high school student in Cross River, New York, and had contentious interactions with a fellow student, Casper Horsfield (who at the time was known as Chelsea Horsfield).  *Id.* at ¶¶ 8-9.  Plaintiff then enrolled at the College and began his time as a student there in August 2017.  *Id.* at ¶ 10.  During his freshman orientation, Plaintiff met a number of his new classmates, including a student named Alexa Newman.  *Id.* at ¶ 11.  During orientation, and on August 24, 2017, Plaintiff visited Newman's dorm room along with some other students.  *Id.* at ¶ 12.  When he arrived at Newman's room, Plaintiff was surprised to see that Horsfield, the student he had problems with in high school, was her roommate.  *Id.* According to Plaintiff, he at some point exited Newman and Horsfield's room with other students

---

[1] The truth of Plaintiff's factual allegations is assumed for purposes of this motion to dismiss only.

and later tried to reenter, at which point Horsfield yelled at Plaintiff to "get out."  *Id.* at ¶ 13.
Plaintiff alleges that he then stepped away from the dorm room, at which point Horsfield closed
and locked the door.  *Id.* at ¶ 14.  A few minutes later, two Purchase College police officers arrived
and asked Plaintiff and his friend John for identification.  *Id.* at ¶ 15.  Plaintiff claims that when he
asked the officers what he did wrong, one of them began to yell at him, said Plaintiff needed to
leave, and that if he did not "he would be arrested, a restraining order against him would be issued
and he would not be allowed in the dorms."  *Id.* at ¶ 16.

Plaintiff then made his way to Purchase College's Office for Students with Disabilities
(now called "Office of Disability Resources") and waited there until his parents arrived.  *Id.* at ¶
19.  Later that day Plaintiff received a phone call from defendant Jared Stammer, who at the time
was Purchase's Conduct Officer in its Office of Community Standards.  *Id.* at ¶ 21.  Stammer
informed Plaintiff that Horsfield, Newman, and a third student, Casey O'Riordan, had requested
no contact orders with him, and emailed him the text of the orders.  *Id.* at ¶¶ 21-22.  The orders
stated that if Plaintiff had "any questions about a No Contact order or wish[ed] to have [sic] review
of the terms of the No Contact order," he should contact "the Office of Community Standards at
saf.conduct@purchase.edu or call 914-251-6027."  *Id.* at ¶ 29.  Plaintiff subsequently requested a
review of the three no contact orders and indicated that he felt he was being discriminated against
because of his disability.  *Id.* at ¶ 32.  Defendants Bice and Balascio informed him that Purchase
College's process was followed in issuing the orders in question.  *Id.* at ¶ 33; Anzalone-Newman
Dec. Ex. 1.[2]

---

[2] The Court can and should consider Exhibit 1, an email sent by Defendant Patricia Bice to Plaintiff
and Plaintiff's mother (Patti Doherty) on November 6, 2017, at 4:32 PM, when deciding this
motion.  It is well-established that "in dismissing a complaint for lack of subject-matter jurisdiction
under Rule 12(b)(1), a court 'may refer to evidence outside the pleadings.'"  *Burfeindt v.
Postupack*, 509 Fed. Appx. 65, 67 (2d Cir. 2013) (quoting *Makarova v. United States*, 201 F.3d

Plaintiff filed the original Complaint in this lawsuit on November 21, 2018, and amended it on March 13, 2019.  *See* ECF Dkt. Nos. 1, 17.  While the no contact orders were issued over two years ago, Plaintiff does not allege that he or the other three individuals have ever violated the orders, or been accused of violating the orders.  Nonetheless, Plaintiff alleges that because of the three no contact orders, he suffers from anxiety and depression, has difficulty utilizing Purchase's facilities and going to class for fear of being arrested, and is afraid to socialize with other students.  *Id.* at ¶ 34.  He also alleges that his ability to perform academically has been disrupted because he has a class with one of the students with whom he has a no contact order.  *Id.* at ¶ 49.  Plaintiff claims Defendants have deprived him of his due process rights as secured by the Fourteenth Amendment, and that the three no contact orders should be "vacated and declared void."  *Id.* at ¶¶ 38-39.  He also alleges that Defendants have violated the ADA, because they "did not take into account [Plaintiff's] disability when issuing the no contact orders, nor did they consider whether the no contact orders were being requested in an effort to tease and bully [him] because of his disability… [nor did they take any] steps to accommodate [Plaintiff's] disability when issuing the no-contact orders."  *Id.* at ¶¶ 51-52.  In addition to seeking that the orders be vacated and declared void, Plaintiff seeks damages and attorney's fees.  *Id.* at ¶¶ 40; 55.

---

110, 113 (2d Cir. 2000)).  And, it has long been held that a court deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim "is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice must properly be taken."  *Grant v. County of Erie*, 542 Fed. Appx. 21, 23 (2d Cir. 2013).  Plaintiff specifically references in the Complaint that he "was informed by Balascio and Bice that Purchase's process was followed with the issuance of the no contact orders, that he was not entitled to challenge or contest the issuance of the no contact orders and they would not be vacated."  ECF Dkt. No. 17 at ¶ 33.  That allegation references the email attached as Exhibit 1, which is thus incorporated by reference.  The email also speaks directly to this allegation, thus it is "'integral' to the complaint" and contains "facts of which judicial notice must properly be taken."

## STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff opposing a Rule 12(b)(1) motion "has the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." *Id. See also Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002); *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996). When deciding a Rule 12(b)(1) motion, the Court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to Plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). *Accord Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) ("jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it"). The Court may go outside the pleadings to resolve disputed factual issues on a 12(b)(1) motion. *Makarova*, 201 F.3d at 113; *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998).

By contrast, when deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6) the Court should accept the plaintiff's factual allegations as true and "draw all reasonable inferences in plaintiff's favor." *Jackson Nat. Life Ins. V. Merrill Lynch & Co.*, 32 F.3d 697, 699-700 (2d Cir. 1994) (citation omitted). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that contains only conclusory allegations cannot

withstand a motion to dismiss. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006). Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

## ARGUMENT

### I.   THE ELEVENTH AMENDMENT BARS PLAINTIFF'S § 1983 CLAIM AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES

#### A. Plaintiff's Claims Against Defendants in Their Official Capacities Must Be Dismissed

The Eleventh Amendment to the United States Constitution precludes federal courts from adjudicating lawsuits by individuals against the States. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000); *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996); *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97-98 (1984). "'Although the Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has been interpreted also to bar federal suits against state governments by a state's own citizens…'" *Morales v. New York*, 22 F. Supp. 3d 256, 272 (S.D.N.Y. 2014) (NSR) (quoting *Woods v. Rondout Valley Cent. Sch. Dist.*, 466 F.3d 232, 236 (2d Cir. 2006). The Eleventh Amendment's provisions also protect state agencies, as well as state employees sued in their official capacities, from suit in federal court. *Pennhurst*, 465 U.S. at 100 (state agencies); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (state employees); *see also Morales*, 22 F. Supp. 3d at 272. This sovereign immunity under the Eleventh Amendment is a "jurisdictional bar [that] applies regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100; *see also Cory v. White*, 457 U.S. 85, 90-91 (1982); *Missouri v. Fiske*, 290 U.S. 18, 27 (1933).

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogate[d] the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "It is well-established that New York has not consented to § 1983 suits in federal court . . . and that § 1983 was not intended to override a state's sovereign immunity." *Mamot v. Bd. of Regents*, 367 Fed. Appx. 191, 192 (2d Cir. 2010) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977), and *Quern v. Jordan*, 440 U.S. 332, 340-42 (1979)). Accordingly, Plaintiff's claims against Defendants in their official capacities must be dismissed. *Madden v. Vt. Supreme Court*, 8 Fed. Appx. 128, 129 (2d Cir. 2001) (upholding dismissal under Rule 12(b)(1) because claim was barred by Eleventh Amendment).

### B.  The Exception To State Employees' Eleventh Amendment Immunity Is Inapplicable

In a limited exception to their Eleventh Amendment immunity, state employees can be sued in their official capacities in federal court where the "'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (citing *Ex parte Young*, 209 U.S. 123 (1908), and quoting *Idaho v. Couer d' Alene Tribe*, 521 U.S. 261, 296 (1997)). Here, however, Plaintiff has not successfully alleged any violation of federal law, much less an ongoing one. *See infra* Sections II and IV. Therefore, Eleventh Amendment sovereign immunity applies, and Plaintiff's § 1983 claim should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

Further, Plaintiff's claims against Defendant Stammer cannot proceed because he does not have the power or authority to implement the relief requested. *See Shipman v. New York State Office of Persons with Developmental Disabilities*, No. 11-cv-2780, 2012 WL 1034903, at *3

7

(S.D.N.Y. Mar. 26, 2012) (granting 12(b)(6) motion to dismiss because, *inter alia*, "[w]ith regard to plaintiff's request for injunctive relief, plaintiff cannot proceed on his request for reinstatement because he has failed to allege that any individual defendant has the authority to reinstate plaintiff.") (citing *Perciballi v. New York*, 09-cv-6933, 2010 WL 3958731, at *4 (S.D.N.Y. Sept. 29, 2010)).

Here, Plaintiff does not and cannot allege that Defendant Stammer has the authority to effectuate any of the injunctive relief requested in the Complaint, including the voiding of the no contact orders, because Stammer no longer works at Purchase College. *See* Stammer Decl. Accordingly, Defendant Stammer has no authority to implement the injunctive relief Plaintiff seeks, and any claims for such relief against him should be dismissed.

## II.    PLAINTIFF'S § 1983 CLAIM SHOULD BE DISMISSED BECAUSE HE FAILS TO ALLEGE A VIOLATION OF HIS DUE PROCESS RIGHTS

To succeed on a procedural due process claim, a plaintiff must "'first identify a property right, second show that the government has deprived him of that right, and third show that the deprivation was effected without due process." *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) (alteration, emphasis, and internal quotation marks omitted). As an initial matter, Plaintiff has not articulated anywhere in the Complaint what constitutionally-protected property interest he has allegedly been deprived of. *See generally* ECF Dkt. No. 17. In response to Defendants' pre-motion letter pointing out this deficiency, Plaintiff submitted a letter to the Court in which he argued that his relevant property interest arises from the "implied contract between Purchase and [Plaintiff] under New York law," which "requires Purchase to act in good faith in its dealings with [Plaintiff], and may support a due process claim". *See* ECF Dkt. No. 16 (citation omitted). Plaintiff also claimed, incorrectly, that the no contact orders violated his liberty interest because

"[d]isciplinary actions for a violation that can lead to the expulsion of a student from a college can violate the liberty interest of a student. *Id.* (citing *Albert v. Carovano*, 824 F.2d 1333, 1339 [sic], n.6 (2d Cir. 1987))." *Id.*

However, the footnote Plaintiff relies upon here does not support the existence of the liberty interest he describes. Rather, it states: "A preliminary question here would be whether the appellants have been deprived of any constitutionally protected rights *by their suspension*. Although the students' complaint does not specify which rights they claim to have been deprived of, we note that, at a minimum, the students' protected liberty interest is at stake because of the 'stigma' attached to *suspension from college* for disciplinary reasons." *Albert*, 824 F.2d at 1338, n.6 (italics added). This footnote plainly addresses the liberty interest that is at stake when a student has actually been suspended—not when there is the mere existence of a no contact order or anything similar. In the present case there have been no suspensions or expulsions, and Plaintiff does not allege otherwise. Furthermore, at least one court has recently held that "as a preliminary matter, a no-contact order does not implicate a substantial property or liberty interest such as education or reputation. The procedural safeguards, in this context, may be more rudimentary than formal." *Haidak v. Univ. of Massachusetts at Amherst*, 299 F. Supp. 3d 242, 265 (D. Mass. 2018), *aff'd in part*, *vacated in part*, *remanded sub nom. Haidak v. Univ. of Massachusetts-Amherst*, 933 F.3d 56 (1st Cir. 2019) (citation omitted). And as discussed, regardless of what Plaintiff has argued by letter, the four corners of the Complaint do not identify the existence of any constitutionally-protected property or liberty interest.

But even if the Court were to accept Plaintiff's argument concerning the existence of a property interest, Plaintiff fails to allege that Defendants have deprived him of this interest because he has not alleged any facts showing that Defendants violated Purchase College's implied contract

with Plaintiff.  Under New York law there is an "implied contract" between a university and its students, which requires the "'academic institution [to] act in good faith in its dealings with its students," and provides the basis for a property interest that is entitled to constitutional protection. *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991).  Yet Plaintiff has alleged no facts whatsoever suggesting Defendants acted in any way other than in good faith towards him.  Nothing in the Complaint alleges that Defendants gave Plaintiff special, negative treatment, or suggests that Defendants even knew who Plaintiff was when the no contact orders were issued.  Plaintiff *does* allege that Defendants did not consider or accommodate his disability in issuing the orders, or recognize that the orders might have been sought in an effort to tease or bully him.  Complaint at ¶¶ 51-52.  But at their strongest these allegations suggest only that Plaintiff feels Defendants abdicated a responsibility towards him—not that they affirmatively exercised a lack of good faith towards Plaintiff.  Nothing in the Complaint shows that Defendants violated their implied contract with Plaintiff, thus Plaintiff has not demonstrated that Defendants have violated whatever property interest he has in having good faith dealings with Purchase College.

Finally, even if the Court were to find that Plaintiff had adequately alleged a deprivation of this property right, Plaintiff has not plausibly alleged that he has been deprived of such a right without due process.  "The touchstone of due process…is the requirement that a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it."  *Spinelli v. City of New York*, 579 F.3d 160, 169 (2d Cir. 2009) (quoting *Matthews v. Eldridge*, 424 U.S. 319, 348-49 (1976)).  While the process due in a given situation "will depend on appropriate accommodation of the competing interests involved," *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982), the Supreme Court has repeatedly recognized that "[d]ue process is flexible [and] calls for such procedural protections as the particular situation demands." *Jennings v. Rodriguez*,

138 S. Ct. 830, 852 (2018) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)); *see also Matthews*, 424 U.S. at 334.  The Second Circuit specifically has held that "[t]here is no rigid formula that determines the constitutional sufficiency of the process employed in connection with any given deprivation of a protected interest."  *DeMichele v. Greenburgh Cent. Sch. Dist. No. 7*, 167 F.3d 784, 791 (2d Cir. 1991).

In the absence of any such "rigid formula" the Court must analyze the process that was afforded to Plaintiff in light of "the particular situation" at hand and the competing interests at stake.  Here, as Plaintiff alleges, he had tried to reenter the dorm room of some of his classmates, one of those classmates yelled at him to leave and then shut and locked the dorm room door, and the Purchase College police were called to the scene.  *Id.* at ¶¶ 13-15.  That same day, Horsfield, Newman, and O'Riordan visited the College's Office of Community Standards to request no contact orders with Plaintiff.  *See id.* at ¶¶ 21-22.  Thus, Defendants faced a situation in which a number of students complained to them about Plaintiff's behavior earlier that day and requested that the Office of Community Standards take action. *Id.*

Given the information available to Defendants at that time, it was reasonable for the College to implement no contact orders between Plaintiff and the complaining students pursuant to the College's processes, which allowed Plaintiff to review or challenge the orders afterward. This is because situations regarding student conduct are often time-sensitive and can have serious safety implications.  The purpose of no contact orders is to keep all students free from harassment and unwanted conduct.  In the circumstance of three or more students visiting the Office of Community Standards on the same day to report an incident and request orders, it would not be reasonable to require office staff to conduct full investigations before granting such orders.  *See Germano v. Dzurenda*, 2011 WL 1214435, at *18 (D. Conn. Mar. 28, 2011) (holding that it was

11

not unconstitutional for a prison to institute a no-contact order without notice or a hearing where the relationship presented a security risk).  Instead, the process the College had in place was detailed right in the text of the orders: if a recipient had any "questions about a No Contact Order or wish[ed] to have a review of the terms of the No Contact Order," they were directed to contact the Office of Community Standards by phone or email.  *Id.* at ¶ 29.

Furthermore, Plaintiff fails to allege a deprivation of a right without due process because he admits that he engaged in and received the applicable process for reviewing the no contact orders.  *See id.* at ¶ 32.  The Complaint states that "Doherty requested review of the no contact orders" and that Defendants Balascio and Bice later informed him "that Purchase's process was followed with the issuance of the no contact orders, that he was not entitled to challenge or contest the issuance of the no contact orders and they would not be vacated."  *Id.* at ¶¶ 32-33.  This allegation is misleading at best.  First, Defendants fulfilled Plaintiff's request for a review of the three no contact orders.  As Defendant Bice wrote to Plaintiff and his mother on November 6, 2017: "Based on my review, the college's No Contact Order policy and process was followed *including a review of the order*[*s*] requested by Jason."  Ex. 1 (italics added).  Moreover, nowhere in this email does Bice state that Plaintiff was not entitled to challenge or contest the orders, *see* Ex.1; rather, that is exactly what Plaintiff did in requesting a review of the orders.  In sum, Bice's November 6, 2017 email makes clear that while Plaintiff clearly does not like the outcome of the due process he received, he did in fact receive such due process.  Finally, the due process he received was reasonable in light of the flexible standard and the demands of the "particular situation" found at Purchase College on August 24, 2017.

Therefore, Plaintiff has failed to state a § 1983 due process claim, and all such claims should be dismissed.

III.   **PLAINTIFF CANNOT SUE DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES UNDER THE AMERICANS WITH DISABILITIES ACT BECAUSE THE ACT DOES NOT PROVIDE FOR SUCH SUITS AGAINST STATE OFFICIALS**

Plaintiff's ADA claims against Defendants in their individual capacities must be dismissed because the ADA does not "provid[e] for individual capacity suits against state officials." *Garcia v. Health Science Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *Morales*, 22 F. Supp. 3d at 271; *Keitt v. New York City*, 882 F. Supp. 2d 412, 426 (S.D.N.Y. 2011) (citing *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).  Accordingly, to the extent that Plaintiff has sued Defendants in their individual capacities under the ADA, any such claim must be dismissed.

IV.   **PLAINTIFF FAILS TO STATE A CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT**

Title II of the ADA states that: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132; *Tennessee v. Lane*, 541 U.S. 509, 513 (2004).  To establish a Title II violation, a plaintiff must show that: (1) he is a qualified individual with a disability, (2) the defendants are subject to the ADA, and (3) that the plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability.  *Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009) (citation omitted); *see Morales*, 22 F. Supp. 3d at 269.  And, a plaintiff in the Second Circuit seeking monetary damages to remedy an alleged Title II violation must show "not only that there was a violation, but that such violation was motivated either by discriminatory animus or ill will stemming from plaintiff's disability."  *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 89 (2d Cir. 2004).

Plaintiff fails to state a claim because he fails to allege any facts to support a finding that any denials of access he has faced have been "*by reason of* [his] disability." *Shomo*, 579 F.3d at 185 (italics added).[3]  As discussed above, there is no way to read such intention or deliberate disability-based discrimination into Defendants' actions, because: (1) Plaintiff has not even alleged that any Defendants were aware of his disability, and (2) no allegations support the belief that Defendants acted with Plaintiff's alleged disability in mind.  *See supra* Section II.  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Plaintiff's statement that he "believed that because of his disability, he was being discriminated against," Complaint at ¶ 32, is exactly that—a legal conclusion disguised as fact.  *See, e.g., Watson v. Geithner*, No. 09 Civ. 6624, 2013 WL 5420932, at *9 (S.D.N.Y. Sept. 27, 2013) ("a plaintiff alleging illegal discrimination must, nevertheless, offer more than a subjective belief that she has been the victim of illegal discrimination"); *Alberts v. Landeau*, No. 09 Civ. 2162, 2011 WL 130303996 (E.D.N.Y. March 31, 2011) (holding that a plaintiff's conclusory allegations based on her own subjective beliefs fail to meet the *Twombly/Iqbal* standard).  Because Plaintiff has not pled that he was discriminated against by Defendants by reason of his disability or that they acted with any discriminatory animus or ill will, he has failed to state an ADA claim, and all such claims should be dismissed.

## V.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity is "an immunity from suit rather than a mere defense to liability," the "driving force" for which is "a desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

---

[3] For the purposes of this motion to dismiss only, Defendants accept as true Plaintiff's allegations concerning his disability and the purported denials of access he faced.

(quotations omitted).  Qualified immunity "attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *White v. Pauly*, 137 S.Ct. 548 (2017) (internal citations omitted).  The Second Circuit has instructed that "[t]he issues on qualified immunity are: (1) whether plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful."  *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (citing *Taravella v. Town of Wolcott*, 599 F.3d 129, 133-134 (2d Cir. 2010)); *see also Morales*, 22 F. Supp. 3d at 274.  "The scope of qualified immunity is broad, and it protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

As shown above, Defendants did not violate any of Plaintiff's clearly established rights in issuing and upholding the no contact orders, and their alleged actions were entirely reasonable. *See supra* Sections II and IV.  Plaintiff has not alleged a single fact in the Complaint to plausibly support his claim that the no contact orders were issued for discriminatory reasons or that he was denied due process.  Plaintiff did not have a "clearly established" right in avoiding a no contact order after at least three students complained about his conduct.  Nor are there any allegations that any of the Defendants acted unreasonably in following the College's procedures in issuing the no contact orders after receiving the complaints, and in subsequently reviewing the orders at Plaintiff's request in accordance with the relevant procedures.  Accordingly, Defendants are entitled to qualified immunity.

## **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Complaint be dismissed in its entirety, together with such other and further relief as it deems just and proper.

Dated: New York, New York
        October 4, 2019

Respectfully submitted,

LETITIA JAMES
Attorney General of the
  State of New York
*Attorney for Defendants*
By:

_____/s/_____ __
ALYSSA ANZALONE-NEWMAN
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-8874
Alyssa.Anzalone-Newman@ag.ny.gov

16