UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
JASON DOHERTY,

                                Plaintiff,             Docket No.
                                                      18-cv-10898 (NSR)

        - against -

PATRICIA BICE, individually and as Dean of Student
Affairs for Purchase College, State University of New
York; JARED STAMMER, individually and as Conduct
Officer for Purchase College, State University of New
York; and QUI QUI BALASCIO, individually and as
Associate Dean for Student Affairs for Purchase College,
State University of New York,

                               Defendants .
-------------------------------------------------------------------- X

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**



*Attorney for Plaintiff*
East Tower, 15th Floor
1425 RXR Plaza
Uniondale, New York 11556
(516) 663-6600

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................... ii

Preliminary Statement....................................................................................1

Allegations of the Amended Complaint ..........................................................2

ARGUMENT....................................................................................................7

POINT I       THE AMENDED COMPLAINT STATES A
CAUSE OF ACTION FOR THE VIOLATES
OF DUE PROCESS........................................................................7

          A. Jason Has A Protected Property and
Liberty Interest.................................................................7

          B. Jason Was Not Provided With Any Process
Either Before Or After When The NCOs Were Issued.......................8

          C. Defendants Were Properly Sued In Their
Individual Capacities ........................................................9

POINT II      PLAINTIFF HAS PROPERLY ALLEGED
A CLAIM UNDER THE ADA.............................................................10

POINT III     PLAINTIFF'S DUE PROCESS CLAIMS IS NOT
BARRED BY THE DOCTRINE OF QUALIFIED IMMUNITY .......................11

CONCLUSION......................................................................................................13

## TABLE OF AUTHORITIES

**CASES**             **PAGE**

*Albert v. Carovano,*
824 F.2d 1333, 1339 (2d Cir.), *mod. on other grounds,*
839 F.2d 871 (2d Cir. 1987)............................................................................7

*Alexiadis v. New York College of Health Professions,*
891 F. Supp.2d 418 (E.D.N.Y. 2012) ...........................................................11

*B.C. v. Mount Vernon School District,*
837 F.3d 152 (2d Cir. 2016), *aff'd,* 660 Fed. App'x. 93 (2d Cir. 2016) .................................. 10-11

*Carrow v. State University of New York at Potsdam,*
No. 17-cv-91, 2018 WL 6068106 (N.D.N.Y. Nov. 20, 2018).......................11

*Distiso v. Cook,*
691 F.3d 226 (2d Cir. 2012).........................................................................12

*Ezekwo v. New York City Health & Hospitals Corp.,*
940 F.2d 775 (2d Cir. 1991)...........................................................................7

*Gilbert v. Homer,*
520 U.S. 924 (1997).......................................................................................8

*Haidak v. University of Massachusetts at Amherst,*
299 F. Supp.3d 242, 265 (D. Mass. 2018), *aff'd in part,*
*vacated in part,* 933 F.3d 56 (1st Cir. 2019)..................................................8

*Matter of Olsson v. Board of Higher Education of the City of New York,*
49 N.Y.2d 408, 426 N.Y.S.2d 248 (1980) .....................................................7

*Nagle v. Marron,*
663 F.3d 100 (2d Cir. 2011)..........................................................................11

*Oladokun v. Ryan,*
No. 06-cv-2330, 2007 WL 3125317 (S.D.N.Y. Oct. 23, 2007).......................7

*Palin v. New York Times,*
___ F.3d ___, 2019 WL 5152444 (2d Cir. Aug. 6, 2019) ...............................9

*Preston v. Hilton Central School District,*
876 F. Supp.2d 235 (W.D.N.Y. 2012) ..........................................................10

ii

*Spinelli v. City of New York*,
579 F.3d 160 (2d Cir. 2009)..................................................................................8

*State Emp. Bargaining Agent Coalition v. Rowland*,
718 F3d. 126 (2d Cir. 2013)............................................................................ 9-10

*Yeldon v. Sawyer*,
No. 10-cv-266, 2012 WL 1995839 (N.D.N.Y. Apr. 26, 2012)......................................10

## <u>STATUTES AND OTHER AUTHORITIES</u>

20 U.S.C. §1415.............................................................................................10

*Education Law* §6444 4(a)..............................................................................4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
JASON DOHERTY,

                                        Plaintiff,          Docket No.
                                                            18-cv-10898 (NSR)

                    - against -

PATRICIA BICE, individually and as Dean of Student
Affairs for Purchase College, State University of New
York; JARED STAMMER, individually and as Conduct
Officer for Purchase College, State University of New
York; and QUI QUI BALASCIO, individually and as
Associate Dean for Student Affairs for Purchase College,
State University of New York,

                                        Defendants .
------------------------------------------------------------------- X

### PLAINTIFF'S MEMORANDUM OF LAW
### IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

#### Preliminary Statement

Plaintiff Jason Doherty ("Jason") is an individual who suffers from Asperger's

Syndrome, a disability where an individual has trouble with social interactions and

understanding the subtleties of communication such as eye contact and body language.  As fully

set forth in the Amended Complaint, at the beginning of his freshman year at Purchase College,

Jason met another freshman student, and when he went to her room with a group of students, he

discovered that her roommate was someone he knew from high school who he had an unfriendly

relationship with.  Although Jason was not accused of any wrongdoing, three of the students,

including the one Jason knew from high school, apparently requested the issuance of No Contact

Orders ("NCOs").  The defendants then issued the NCOs without providing Jason with an

opportunity to be heard, nor was Jason provided with an opportunity to contest the NCOs after

the fact.

Jason has now commenced this action against the defendants, employees of Purchase College, both individually and in their official capacities, because Jason was not provided with any process whatsoever in connection with the issuance of the NCOs. The NCOs were issued purportedly based on the request from three students, although Jason was not provided with any opportunity, either before or after the issuance of the NCOs, to contest the requests. Further, given the nature of Jason's disability, i.e. difficulty understanding social ques, before the NCOs were issued arising from social interactions between students, but where no wrongful conduct had been alleged, Jason's disability should have been taken into account. Further, as a result of Jason's disability the NCOs have prevented Jason from fully utilizing the school facilities, and he has been subjected to cyber bullying.

Accordingly, as explained below, the Amended Complaint fully alleges a cause of action based on failure to provide Jason with due process in connection with the issuance of the NCOs, and for violations of the Americans with Disabilities Act ("ADA"). Further, since the Amended Complaint is against the defendants in both their individual capacities and as officers and employees of Purchase, the Amended Complaint can be maintained against these defendants as a matter of well settled law. Accordingly, defendants' Motion to Dismiss should be denied in its entirety.

### Allegations of the Amended Complaint

Jason suffers from Asperger Syndrome, and has been classified as a disabled student. Amended Complaint ¶7. Despite his disability, Jason graduated from John Jay High School in Cross River, New York, with honors, and received several awards, including the National Technical Honors Society. Amended Complaint ¶8. While attending John Jay High School, Jason participated in programs at Putnam Northern Westchester BOCES where he had

- 2 -

contentious interactions with Casper Horsfield a/k/a Chelsea Horsfield ("Horsfield") . Amended Complaint ¶9.

Jason began attending Purchase as a freshman, and attended freshman orientation in August of 2017. Amended Complaint ¶10.  During the orientation period Jason met a number of other freshman students, including Alexa Newman ("Newman"). Amended Complaint ¶11. When Jason went with Newman to her room with other students, he was surprised to see Horsfield who was Newman's roommate. Amended Complaint ¶12.  After Jason had exited the room with Newman and some other students, and then tried to re-enter, Horsfield yelled at Jason to "get out". Amended Complaint ¶13.  Jason stepped away from room and Horsfield closed the door and locked it. Amended Complaint ¶14.

A few minutes later, two campus police officers approached Jason and his friend John while they were standing in the hallway, and asked for their IDs. Amended Complaint ¶15. Jason asked the campus police officers what he did wrong, and in response one of the officers started yelling at Jason to leave and that if he didn't he would be arrested, a restraining order against him would be issued and he would not be allowed in the dorms. Amended Complaint ¶16.

Jason, as a result of his Asperger's, was terribly frightened and intimidated, and afraid for his safety, and immediately left the building and called his mother. Amended Complaint ¶17. Jason was worried and was concerned that he was going to jail, even though he did not know what he had done wrong. Amended Complaint ¶18.  Jason, with help from another student, then went to the Office for Students with Disabilities and stayed there until his parents arrived. Amended Complaint ¶19.

Jason's parents were able to calm him down and he left the orientation.  However, later

that day he received a call from defendant Stammer.  Stammer advised Jason that three (3) girls

had requested do not contact orders against him, and sent Jason emails of the NCOs. Amended

Complaint ¶20-21.  The individuals who requested the NCOs were Horsfield, Newman, and

Casey O'Riordan ("O'Riordan").  Jason has never met O'Riordan, and would not recognize her.

Amended Complaint ¶22-23.

Thereafter, the fact that Jason had NCOs issued against him was posted on a community

online chat room. Amended Complaint ¶24.

NCOs are provided for in *Education Law* §6444 4(a), which provides:

> When the accused or respondent is a student, to have the institution
> issue a "no contact order" consistent with institution policies and
> procedures, whereby continued intentional contact with the
> reporting individual would be a violation of institution policy
> subject to additional conduct charges; if the accused or respondent
> and a reporting individual observe each other in a public place, it
> shall be the responsibility of the accused or respondent to leave the
> area immediately and without directly contacting the reporting
> individual.  Both the accused or respondent and the reporting
> individual shall, upon request and consistent with institution
> policies and procedures, be afforded a prompt review, reasonable
> under the circumstances, of the need for and terms of a no contact
> order, including potential modification, and shall be allowed to
> submit evidence in support of his or her request. Institutions may
> establish an appropriate schedule for the accused and respondents
> to access applicable institution buildings and property at a time
> when such buildings and property are not being accessed by the
> reporting individual. Amended Complaint ¶25.

At the time the NCOs were filed against Jason, Purchase did not have any specific appeal

mechanism, nor was there any hearing or other process available either prior to or after the

issuance of the NCOs. Amended Complaint ¶26.  At the time the NCOs were filed against Jason,

no reason had been given for why they were being issued. Amended Complaint ¶27.

With regard to NCOs, at the time that they were issued against Jason, Purchase's website stated:

> In cases involving allegations of sexual misconduct, sex discrimination, domestic violence, dating violence, and/or stalking, when the accused is a student, the college may issue a "No Contact Order," meaning that attempts to contact the complainant is a violation of college policy subject to additional conduct charges. Additionally, if the accused and complainant observe each other in a public place, it is the responsibility of the accused to leave the area immediately and without directly contacting the complainant. Amended Complaint ¶28.

Further, the NCOs issued against Jason state:

> My office has received a request for a no contact order with Jason Doherty.
>
> Alexa Newman and Jason Doherty are directed to not have any contact neither in person, nor by any other means (e.g. telephone, letters, recordings, electronic, etc.). Furthermore, no individual is to have contact on your behalf in any form. This no contact order remains in effect until such time as it is officially lifted in writing by the College.
>
> Please note that as per Office of Community Engagement policy, if you are roommates/suitemates/apartment-mates, both parties will be moved. There will be situations where certain accommodations will not allow for student moves to occur. The Office of Community Engagement will evaluate and decide the final outcome/relocation at its discretion.
>
> In cases involving allegations of sexual misconduct, sex discrimination, domestic violence, dating violence, and/or stalking, if the accused and complainant are in the same location, it is the responsibility of the accused to leave the area immediately and without directly contacting the complainant.
>
> In any case, a violation of a No Contact Order should be reported to either the Office of Community Standards, the Office of Community Engagement, or University Police. A violation of a No Contact Order is subject to disciplinary action. If you have any questions about a No Contact Order or wish to have review of the terms of the No Contact Order, please contact the Office of

Community Standards at saf.conduct@purchase.edu or call
914-251-6027.

cc:    Community Engagement
      Student File
      University Police        Amended Complaint ¶29.

At the time the NCOs were filed against Jason, Purchase provided no process to challenge the issuance of NCOs, nor did it require any factual assertion for the issuance of NCOs. Amended Complaint ¶30.  Upon information and belief, no complaints were filed alleging that Jason had violated the Code of Conduct or engaged in any other wrongful conduct, and the campus police did not file any charges against Jason, nor did they make any factual inquiries to Jason. Amended Complaint ¶31.

Jason requested review of the NCOs, and also indicated that he believed that because of his disability, he was being discriminated against. Amended Complaint ¶32.  Jason was informed by Balascio and Bice that Purchase's process was followed with the issuance of the NCOs, that he was not entitled to challenge or contest the issuance of the NCOs and they would not be vacated. Amended Complaint ¶33.

As a result of the issuance of the NCOs and his disability, Jason suffers great anxiety and depression, has difficulty going to class or utilizing Purchase's facilities for fear of being arrested, and is afraid to socialize with other students. Amended Complaint ¶34.

After the NCOs were issued to Jason, Purchase revised its policies to allow procedures to contest NCOs, but Jason was not permitted to avail himself of these new procedures.  Amended Complaint ¶ 35-36.[1]

---

[1]    Purchase's website now sets forth its new policy allowing a challenge to the issuance of the NCOs, stating:

"No Contact Orders

\*     \*     \*

- 6 -

## ARGUMENT

## POINT I

## THE AMENDED COMPLAINT STATES A CAUSE OF ACTION FOR THE VIOLATION OF DUE PROCESS

**A.      Jason Has A Protected Property And Liberty Interest**

State law can provide an individual with a property or liberty interest protected by the due process requirements of the United States Constitution. *See Ezekwo v. New York City Health & Hospitals Corp.*, 940 F.2d 775, 782 (2d Cir. 1991). Under New York law, Jason has a constitutionally protected property interest by reason of the implied contract between Purchase and Jason. This implied contract requires Purchase to act in good faith in its dealings with Jason, and may support a due process claim. *Oladokun v. Ryan*, No. 06-cv-2330, 2007 WL 3125317 (S.D.N.Y. Oct. 23, 2007); *see also Matter of Olsson v. Board of Higher Education of the City of New York*, 49 N.Y.2d 408, 426 N.Y.S.2d 248 (1980).

In addition to a property interest, the NCOs also violated Jason's liberty interest. Disciplinary actions for a violation that can lead to the expulsion of a student from a college can violate the liberty interest of a student. *Albert v. Carovano*, 824 F.2d 1333, 1339, n.6 (2d Cir.), *mod. on other grounds*, 839 F.2d 871 (2d Cir. 1987). Here, if Jason violates the NCOs he can be expelled from Purchase.

---

Any student that has a No Contact Order can:

-   request to challenge the application of a No Contact Order by providing information/evidence to support that the order should not be in place

-   provide information/evidence that supports an alteration or modification of the No Contact Order

-   present information/evidence that supports that the No Contact Order should remain in place

If you have any questions, or wish to have a review of the No Contact Order, please contact the Office of Community Standards at saf.conduct@purchase.edu."

www.purchase.edu; Office of Community Standards; No Contact Orders

Further, even the cases relied upon by defendants reflect that Jason has a property and liberty interest that required some due process when the NCOs were issued.  For example, in *Haidak v. University of Massachusetts at Amherst*, 299 F. Supp.3d 242, 265 (D. Mass. 2018), *aff'd in part, vacated in part*, 933 F.3d 56 (1ˢᵗ Cir. 2019), the Court found that the University complied with the due process requirement when issuing an NCO to the plaintiff because he was given an opportunity to contest the complaint against him, and he was also "given an opportunity to contest the no-contact order".  Accordingly, defendants were required to provide Jason with due process in connection with the NCOs.

**B.     Jason Was Not Provided With Any Process Either
         Before Or After When The NCOs Were Issued**

While there is no rigid formula as to what due process is required when an individual is deprived of a property or liberty interest, here no process was given either before or after the NCOs were issued.  *Gilbert v. Homer*, 520 U.S. 924, 930 (1997).  At the time, Purchase had no procedures, not even an informal conference, that would allow a student that was subject to a request for an NCO to challenge the request.  Apparently, NCOs were given to Jason simply based on the request of the other students and there was nothing Jason could do about it.  And, while it may have been difficult to provide due process prior to the issuance of the NCOs, there is no reason some type of process could not have been given to challenge the NCOs after they had been issued.  *See e.g. Spinelli v. City of New York*, 579 F.3d 160, 175 (2d Cir. 2009) (exigent circumstances justifying no pre-deprivation hearing does not explain a lack of a timely post-deprivation hearing).

And, that some process could have been afforded to Jason with regard to the NCOs is clearly established by Purchase's revised rules.  Purchase now allows a student to challenge

NCOs.  However, the defendants have refused Jason the right to utilize this process because the NCOs predated this policy change.

Further, the lack of any process before or after the NCOs were issued to Jason is especially troubling because of Jason's disability.  Asperger's Syndrome impairs an individual's ability to engage in social interactions and to understand the subtleties of communication. *Asperger's Syndrome, WebMD*.  Here, the NCOs arose out of social interaction between Jason and the other students, but no process was provided to Jason so it could be explained how his disability played a role in that interaction.

As for defendants' attempt to rely on a hearsay email sent to Jason after he complained about the issuance of the NCOs, not only is the email improper on this motion to dismiss [*Palin v. New York Times*, ___ F.3d ___, 2019 WL 5152444 *3 (2d Cir. Aug. 6, 2019)], it does not indicate that Jason was given any process to contest the NCOs.  The email simply says the NCOs were properly issued under the college's "policy and process".  There is no information provided as to what were the college's "policy and process", nor do defendants provide any information on this motion as to the "policy and process" that existed at the time the NCOs were issued. Further, the email does not reference any opportunity for Jason to contest the NCOs. The Amended Complaint clearly alleges that Jason was given no opportunity to challenge the NCOs and nothing on this motion to dismiss dispels this allegation.

C.    **Defendants Were Properly Sued
      In Their Individual Capacities**

Defendants contend that they cannot be sued for a due process violation in their official capacity because it would violate sovereign immunity.  However, defendants are also being sued in their individual capacity, and it is well settled that a 1983 plaintiff may seek damages against defendants in their individual capacities. *State Emp. Bargaining Agent Coalition v. Rowland,*

718 F3d. 126, 137 (2d Cir. 2013) ("Claims for monetary damages against the defendants in their individual capacities are not barred by the Eleventh Amendment"); *Yeldon v. Sawyer*, No. 10-cv-266, 2012 WL 1995839, *9 (N.D.N.Y. Apr. 26, 2012).

Here, as alleged in the Amended Complaint, the violation of Jason' due process rights was done by the individual defendants while carrying out their duties as employees of Purchase. Accordingly, sovereign immunity affords no basis to dismiss the Amended Complaint.

## POINT II

## PLAINTIFF HAS PROPERLY ALLEGED A CLAIM UNDER THE ADA

As alleged in the Amended Complaint, the issuance of the NCOs has interfered with Jason's ability to attend and fully benefit from his attendance at college.  Jason is an individual with disabilities suffering from Asperger's,[2] and whether NCOs should have been issued should have taken into account his disability, especially given that they arose from a social interaction between Jason and other students.[3]  Further, as alleged in the Amended Complaint, the NCOs have a disproportionate impact on Jason because of his disability, creating anxiety and confusion, and preventing him from fully engaging in his college studies.

In order for the Amended Complaint to allege the elements of a discrimination claim under the ADA, the Amended Complaint must set forth that Jason is a qualified individual with a disability; that Jason has been denied an opportunity to participate in and benefit fully from a public entity's services or has otherwise been discriminated against; and such exclusion or discrimination was due to Jason's disability.  *B.C. v. Mount Vernon School District*, 837 F.3d

---

[2]    Asperger's Syndrome has been found to be a disability under the ADA. *Preston v. Hilton Central School District*, 876 F. Supp.2d 235, 242 (W.D.N.Y. 2012).
[3]    Under federal law, a student in a primary or secondary school is entitled to a "manifestation hearing" before a disabled student can be disciplined to determine if the alleged wrongful behavior resulted from his or her disability.  20 U.S.C. §1415.

152, 158 (2d Cir. 2016), *aff'd*, 660 Fed. App'x. 93 (2d Cir. 2016); *Alexiadis v. New York College of Health Professions*, 891 F. Supp.2d 418 (E.D.N.Y. 2012).   Exclusion or discrimination may take the form of disparate treatment, disparate impact, or failure to make reasonable accommodation. *Id*; *See also Carrow v. State University of New York at Potsdam*, No. 17-cv-91, 2018 WL 6068106 *1 (N.D.N.Y. Nov. 20, 2018).

The Amended Complaint specifies that Jason has a disability, Asperger's Syndrome. Because of the disability he has difficulty understanding the NCOs, fears he is going to be arrested, and because of that fear is not able to fully participate in college life.   As a result, the issuance of the NCOs has a disproportionate impact on Jason because of his disability. Accordingly, even if the process for issuing NCOs were equally applied to nondisabled students, because of Jason's disability, the issuance of the NCOs without any hearing or other process to consider Jason's disability, and the exasperated adverse impact on Jason and his ability to benefit from Purchase's services, sufficiently alleges a claim under the ADA.

As for the assertion that under the ADA defendants cannot be sued in their individual capacities, this simply ignores that they have also been sued in their official capacities. Accordingly, this contention is not a basis to dismiss the claims under the ADA.

## POINT III

### PLAINTIFF'S DUE PROCESS CLAIM IS NOT BARRED BY THE DOCTRINE OF QUALIFIED IMMUNITY

The Second Circuit has held it is not necessary in order to defeat a qualified immunity defense that the specific wrongful conduct has previously been held illegal.   The Second Circuit, in *Nagle v. Marron*, 663 F.3d 100, 114-115 (2d Cir. 2011), explained:

> At the same time, the standard must not be so specific that qualified immunity could be overcome only if "the very action in question has previously been held unlawful." *Id*.   Rather, "the

unlawfulness" of the alleged action "must be apparent" to a reasonable official "in the light of pre-existing law." *Id.*; *see also Saucier*, 533 U.S. at 202, 121 S.Ct. 2151 ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.").

The "subjective good faith of government officials" plays no part in the inquiry. *Harlow*, 457 U.S. at 816, 102 S.Ct. 2727. Our "inquiry is confined to the objectively ascertainable question whether a reasonably well-trained [official] would have known that [his conduct] was illegal." *Malley*, 475 U.S. at 345, 106 S.Ct. 1092 (internal quotation marks omitted). "Implicit in the idea that officials have some immunity … in a recognition that they may err" and a determination that "it is better to risk some error … than not to … act at all." *Scheuer v. Rhodes*, 416 U.S. 232, 242, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated by Harlow*, 457 U.S. 800, 102 S.Ct. 2727 (1982). The objective inquiry allows room for error by guaranteeing officials "immunity for reasonable mistakes as to the legality of their actions," *Saucier*, 533 U.S. at 206, 121 S.Ct. 2151, but not for unreasonable mistakes, which should be prevented by an official's knowledge of the "law governing his conduct," *Harlow*, 457 U.S. at 819, 102 S.Ct. 2727. The reasonableness of the official's action, in turn, is "assessed in light of the legal rules that were clearly established at the time [the action] was taken." *Anderson*, 483 U.S. at 639, 107 S.Ct. 3034 (internal quotation marks and citation omitted). The focus therefore remains on whether, at the time of the alleged conduct, the right was clearly established, rendering it objectively unreasonable for an official to think that his action was lawful. *See Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 433 n. 11 (2d Cir. 2009) (noting that an official "who violates clearly established law necessarily lacks an objectively reasonable belief that his conduct was lawful"); *Locurto*, 264 F.3d at 169 ("[I]t can never be objectively reasonable for a governmental official to act with the intent that is prohibited by law.").

Here, it would not be reasonable for defendants to believe they could issue NCOs against Jason without providing him with any due process, either before or after they were issued. Accordingly, the individual defendants have not demonstrated that the claims against them should be dismissed based on qualified immunity. *See also Distiso v. Cook*, 691 F.3d 226 (2d Cir. 2012).

## CONCLUSION

For the reasons set forth above, defendants' Motion to Dismiss should be denied in its

entirety.

Dated: Uniondale, New York
       November 4, 2019

                              RUSKIN MOSCOU FALTISCHEK P.C.

By:                                  

                         E. Christopher Murray
                         *Attorney for Plaintiff*
                         East Tower, 15th Floor
                         1425 RXR Plaza
                         Uniondale, New York  11556
                         (516) 663-6600

881821

- 13 -