UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _09/16/2020___
```

JASON DOHERTY,

                              Plaintiff,

        -against-

PATRICIA BICE, individually and as Dean of Student
Affairs at Purchase College, State University of New
York; JARED STAMMER, individually and as
Conduct Officer for Purchase College, State
University of New York; and QUI QUI BALASCIO,
individually and as Associate Dean for Student Affairs
for Purchase College, State University of New York,

                              Defendants.

18-cv-10898 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

        Plaintiff Jason Doherty ("Plaintiff" or "Doherty") commenced the instant action on

November 21, 2018.  (*See* Complaint, ECF No. 1; Amended Complaint ("Am. Compl."), ECF

No. 17.)  In this action, Plaintiff alleges claims pursuant to 42 U.S.C. § 1983 for violations of the

Fourteenth Amendment to the United States Constitution and the Americans with Disabilities

Act, 42 U.S.C. § 12132 ("ADA"), against Defendants Patricia Bice, Jared Stammer, and Qui Qui

Balascio (together, "Defendants").  Specifically, Plaintiff alleges that Defendants denied him due

process in relation to the issuance of no contact orders and failed to comply with the disability

accommodation and antidiscrimination requirements of the ADA.

        Before the Court is Defendants' Motion to Dismiss the Amended Complaint pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (*See* ECF No. 29.)  For the following

reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

### I.    Factual Allegations

The following facts are derived from the Amended Complaint and are taken as true and constructed in the light most favorable to *pro se* Plaintiff for the purposes of this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

A court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6).  *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit.  *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

### a.    SUNY Purchase Orientation

Plaintiff is a nineteen-year-old student attending Purchase College, State University of New York ("SUNY Purchase").  (Am. Compl. ¶ 3.)  Plaintiff has Asperger Syndrome, and has been classified as a disabled student.  (*Id*. ¶ 7.)  Prior to attending SUNY Purchase, while in high school, Plaintiff participated in programs at Putnam Northern Westchester BOCES where he had contentious interactions with Casper Horsfield a/k/a Chelsea Horsfield ("Horsfield").  (*Id.* ¶ 9.)

Plaintiff began attending SUNY Purchase as a freshman and attended freshman orientation in August 2017.  (*Id*. ¶ 10.)  During the orientation period, Plaintiff met a number of other freshman students, including Alexa Newman ("Newman").  (*Id.* ¶ 11.)  Plaintiff went with Newman to her room with other students, and was surprised to see Horsfield, who was

Newman's roommate.  (*Id*. ¶ 12.)  Plaintiff exited the room with Newman and some other students, then tried to re-enter.  (*Id.* ¶ 13.)  Horsfield yelled at Plaintiff to "get out."  (*Id.*)  Plaintiff stepped away from the room and Horsfield closed the door and locked it.  (*Id.* ¶ 14.)

A few minutes later, two campus police officers approached Plaintiff and his friend while they were standing in the hallway and asked for their IDs.  (*Id*. at 15.)  Plaintiff asked the police officers what he did wrong, and in response one of the officers started yelling at Plaintiff—the officer told Plaintiff to leave, and that if he did not, then Plaintiff would be arrested, a restraining order against him would be issued, and he would not be allowed in the dorms.  (*Id*. ¶ 16.)

Plaintiff, as a result of his Asperger's, was frightened, intimidated, and afraid for his safety, and immediately left the building and called his mother.  (*Id*. ¶ 17.)  Plaintiff was worried and concerned that he was going to jail.  (*Id*. ¶ 18.)  Plaintiff proceeded to the Office for Students with Disabilities and stayed there until his parents arrived, and he left the orientation.  (*Id*. ¶¶ 19–20.)

### b.  Issuance of No Contact Orders

Later that day, Plaintiff received a call form Defendant Jared Stammer ("Stammer"), SUNY Purchase's Conduct Officer for Community Standards.  (*Id.* ¶¶ 5, 21.)  Stammer advised Plaintiff that three of the female students had filed do not contact orders against him; Stammer sent Plaintiff emails of the no contact orders (the "No Contact Orders").  (*Id.* ¶¶ 21, 29.)  The individuals who requested the contact orders were Horsfield, Newman, and a third student, Casey O'Riordan ("O'Riordan").  (*Id.* ¶ 22.)  Plaintiff alleges he has never met O'Riordan and

would not recognize her.  (*Id.* ¶ 23.)  Thereafter, the fact that Plaintiff had no contact orders

issued against him was posted on a community online chat room.  (*Id.* ¶ 24.)

### c.  SUNY Purchase's Policies and Procedures Regarding No Contact Orders

In or about August 2017, SUNY Purchase's website stated the following with regard to

no contact orders:

> In cases involving allegations of sexual misconduct, sex discrimination, domestic
> violence, dating violence, and/or stalking, when the accused is a student, the
> college may issue a "No Contact Order," meaning that attempts to contact the
> complainant is a violation of college policy subject to additional conduct charges.
> Additionally, if the accused and complainant observe each other in a public place,
> it is the responsibility of the accused to leave the area immediately and without
> directly contacting the complainant.

(*Id.* ¶ 28.)

The No Contact Orders provided to Plaintiff included an email address and phone

number to contact the Office of Community Standards should Plaintiff "have any questions

about a No Contact order or wish to have [sic] review of the terms of the No Contact Order."

(*Id.* ¶ 29.)  At the time the No Contact Orders were filed against Plaintiff, SUNY Purchase did

not have any specific appeal mechanism, nor was there any hearing or other process available to

challenge the issuance of the No Contact Orders either prior to or after the issuance of the orders.

(*Id.* ¶¶ 26, 30.)  In addition, SUNY Purchase did not require any factual assertion for the issuance

of no contact orders, and no reason was given for why they were issued.  (*Id.* ¶¶ 27, 30.)  No

complaints were filed alleging that Doherty had violated the Code of Conduct or engaged in any

other wrongful conduct, and the campus police did not file any charges against Plaintiff, nor did

they make any factual inquires to Plaintiff.  (*Id.* ¶ 31.)

### d.  Subsequent Events Regarding the No Contact Orders

Plaintiff requested review of the No Contact Orders, and also indicated that he believed

that because of his disability, he was being discriminated against.  (*Id.* ¶ 32.)  Plaintiff was

informed by Qui Qui Balascio ("Balascio"), Associate Dean for Student Affairs, and Patricia Bice ("Bice"), Dean of Student Affairs, that SUNY Purchase's process was followed with the issuance of the No Contact Orders, that he was not entitled to challenge or contest the issuance of the No Contact Orders, and that they would not be vacated.  (*Id.* ¶¶ 4, 6, 33.)

Subsequent to the issuance of the No Contact Orders against Plaintiff, SUNY Purchase adopted rules and procedures to review no contact orders.  (Am. Compl. ¶ 35.)  These new rules and procedures were not applied to Plaintiff, and the request to remove the No Contact Orders from his file and to have them dismissed was unsuccessful.  (*Id.* ¶ 36.)

As a result of the issuance of the no contact orders and his disability, Plaintiff suffers great anxiety and depression, has difficulty going to class or utilizing SUNY Purchase's facilities for fear of being arrested, and is afraid to socialize with other students.  (*Id.* ¶ 34.)  Further, Plaintiff's ability to perform academically has been disrupted because he is in a class with one of the students for whom a no contact order has been issued.  (*Id.* ¶ 49.)

## LEGAL STANDARD

### I.   12(b)(6)

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570.  A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable.  *Iqbal*, 556 U.S. at 678.  To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations."  *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir.

2013).  While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79.

## II.     12(b)(1)

A claim is subject to dismissal under Rule 12(b)(1) if the court lacks subject matter jurisdiction to adjudicate it pursuant to statute or constitutional authority. See Fed. R. Civ. P. 12(b)(1); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction, a district court may refer to evidence outside the pleadings.  *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). A lack of standing and a failure to exhaust administrative remedies constitute jurisdictional defects and may be addressed through a Rule 12(b)(1) motion.  *Johnson v. Benheim*, 2001 WL 799569 at *4 (S.D.N.Y. July 13, 2001) (internal citation omitted).  Plaintiff bears the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction of the claim asserted. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

## III.    42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).  To state a claim under § 1983, a plaintiff must allege two

6

essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

Plaintiff brings two claims against Defendants individually and in their official capacities: (1) a due process claim pursuant to 42 U.S.C. § 1983 (Am Compl. ¶¶ 37–40); and (2) a claim under Title II of the ADA, 42 U.S.C. § 12132, for disability discrimination (*Id.* ¶¶ 41– 55). Plaintiff seeks injunctive relief in the form of the No Contact Orders being vacated and declared void, monetary damages in excess of $100,000, and attorney's fees in excess of $50,000. (*Id.* ¶ 55.) The Court considers each claim in turn.

### I.    Due Process Claims

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. To state a procedural due process claim, Plaintiff must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire,* 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).

#### a.    Property Interest

Plaintiff argues that he has alleged a protected property interest. To allege a property interest protected by constitutional due process requirements, Plaintiff must show a "legitimate claim of entitlement" to a benefit provided by law in the appropriate jurisdiction, as opposed to "an abstract need or desire for it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564,

577 (1972).  Property interests "extend well beyond actual ownership of real estate, chattels, or money."  *Id.* at 571.

Plaintiff submits that under New York law, he has a constitutionally protected property interest by reason of the implied contract between SUNY Purchase and Plaintiff.  New York law recognizes that an "implied contract" exists "between [a college or university] and its students," which requires the "academic institution [to] act in good faith in its dealing with its students." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (quoting *Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 414 (N.Y. 1980)).  The Second Circuit has observed that such an implied contract may support a due process claim.  *See Branum*, 927 F.2d at 705 ("Such an implied contract, recognized under state law, provides the basis for a property interest that would be entitled to constitutional protection.").  "[A] Rule 12(b)(6) dismissal of a student's claim is improper where the contention is that the institution's action was 'motivated by bad faith or ill will unrelated to academic performance.'"  *Id.* (quoting *Clements v. County of Nassau*, 835 F.2d 1000, 1004 (2d Cir. 1987).

Here, however, the Amended Complaint is devoid of any allegations that Defendants acted in bad faith or with ill will, nor does it contain any allegations from which that inference may be fairly drawn.  Accordingly, Plaintiff has not alleged sufficient facts to support a constitutionally protected property interest.  *See Md. Ashik Islam v. Melisa*, No. 18-CV-2535(KAM)(LB), 2020 WL 1452463, at *12 n.8 (E.D.N.Y. Mar. 24, 2020) (rejecting due process claim based on an alleged property interest where allegations "raise no inference that 'bad faith or ill will' played a role in [defendant]'s dealings with [plaintiff]."); *cf. Oladokun v. Ryan*, No. 06 CV 2330 (KMW), 2007 WL 3125317, at *4 (S.D.N.Y. Oct. 23, 2007) (concluding plaintiff alleged a deprivation of a property interest under New York law because the allegations

"support an inference that the . . . Defendants disenrolled Plaintiff because they bore him ill will and wanted to facilitate his deportation."). Plaintiff's due process claim premised on a protected property interest is therefore dismissed without prejudice.

### b. Liberty Interest

Plaintiff also contends that he has alleged a protected liberty interest. Plaintiff relies on the Second Circuit's opinion in *Albert v. Carovano*, which considered due process claims stemming from the disciplinary suspensions of twelve students at a private college. *Albert v. Carovano*, 824 F.2d 1333, 1339 (2d Cir.), *modified on reh'g*, 839 F.2d 871 (2d Cir. 1987), *on reh'g en banc*, 851 F.2d 561 (2d Cir. 1988). The Second Circuit noted that, "at a minimum, the students' protected liberty interest is at stake because of the 'stigma' attached to suspension from college for disciplinary reasons." *Id.* at 1339 n.6; *see also Goss v. Lopez*, 419 U.S. 565, 574-76 (1975) (concluding that student's 10–day suspension implicated the constitutionally grounded liberty interest in "a person's good name, reputation, honor, or integrity.").

But *Albert* and *Goss* are distinguishable because they involved disciplinary suspensions; in the present case there have been no suspensions or expulsions. Furthermore, the only other case Plaintiff cites on this point actually undercuts Plaintiff's position: the district court in *Haidak v. Univ. of Massachusetts at Amherst* explicitly stated that "a no-contact order does not implicate a substantial property or liberty interest such as education or reputation." 299 F. Supp. 3d 242, 265 (D. Mass. 2018), *aff'd in part, vacated in part, remanded sub nom. Haidak v. Univ. of Massachusetts-Amherst*, 933 F.3d 56 (1st Cir. 2019). Because a student's liberty interests are implicated by a no contact order to a significantly lesser degree than by a suspension, the Court declines to extend the concept of a protected liberty interest to the circumstances here. Plaintiff's due process claim based on a protected liberty interest is therefore dismissed with prejudice.

Because Plaintiff has failed to allege a constitutionally protected property or liberty interest, the Court need not proceed to analyze whether Plaintiff has adequately alleged that SUNY Purchase provided Plaintiff with constitutionally insufficient process.[1]

### c. Immunity Under the Eleventh Amendment

Defendants argue that the Eleventh Amendment bars Plaintiff's § 1983 claim against Defendants in their official capacities.  The Court agrees.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI.  "Although the Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has been interpreted also to bar federal suits against state governments by a state's own citizens . . . ." *Woods v. Rondout Valley Cent. Sch. Dist.*, 466 F.3d 232, 236 (2d Cir.2006) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)).

A claim that is barred by a state's sovereign immunity must be dismissed pursuant to the Eleventh Amendment for lack of subject matter jurisdiction. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 252, 131 S.Ct. 1632, 1637, 179 L.Ed.2d 675 (2011) (noting that "the Eleventh Amendment . . . confirm[s] the structural understanding that States entered the Union with their sovereign immunity intact, unlimited by Article III's jurisdictional grant"); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ("For over a

---

[1] Defendants also argue that they are entitled to qualified immunity.  Because the Court has dismissed Plaintiff's constitutional claims, it declines to address these arguments at this time.  Moreover, the Court notes the qualified immunity defense is "typically addressed at the summary judgment stage," because it "usually depends on the facts of the case, . . . making dismissal at the pleading stage inappropriate."  *Woods v. Goord*, No. 01-CV-3255, 2002 WL 731691, at *10 (S.D.N.Y. Apr. 23, 2002) (citing *King v. Simpson*, 189 F.3d 284, 289 (2d Cir. 1999)).

century [the Supreme Court has] reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.' " (quoting *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)).

"The Eleventh Amendment bars [§ 1983] action[s] against a state or its agencies absent a waiver of immunity or congressional legislation specifically overriding immunity." *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010). It is well-established that New York has not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity. *Id.* Therefore, under the Eleventh Amendment, SUNY employees sued in their official capacities are immune from suit for § 1983 claims. *See Morales v. New York*, 22 F. Supp. 3d 256, 272 (S.D.N.Y. 2014) (finding § 1983 claims against SUNY employees in their official capacities barred by Eleventh Amendment immunity); *Buckley v. New York*, 959 F. Supp. 2d 282, 297 (E.D.N.Y. 2013) (same); *Garcia v. State University of New York Health Sciences Center at Brooklyn*, 2000 WL 1469551, at *4 (E.D.N.Y. Aug. 21, 2000) (same).[2]

In a limited exception to their Eleventh Amendment immunity, state employees can be sued in their official capacities in federal court where the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *See Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–56 (2011) (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) and citing *Ex parte Young*, 209 U.S. 123 (1908)); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Mary Jo C. v. N.Y. State &*

---

[2] *See also Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (suits against state employees in their official capacities are barred by the Eleventh Amendment); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 120–21, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (Eleventh Amendment bars federal suits against state officials for violations of state law); *Dube v. State University of New York*, 900 F.2d 587, 594–95 (2d Cir. 1990) (Eleventh Amendment bars § 1983 suit against SUNY, which "is an integral part of the government of the State and when it is sued the State is the real party."); *accord Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir. 2000) (rejecting federal suit against state officials under Eleventh Amendment); *Catone v. Spielmann*, 149 F.3d 156, 160 n. 1 (2d Cir. 1998) (citing *Pennhurst* regarding Eleventh Amendment bar on state law claims).

*Local Ret. Sys.*, 707 F.3d 144, 152 (2d Cir. 2013), *cert. dismissed*, 569 U.S. 1040 (2013); *KM Enterprises, Inc. v. McDonald*, 518 Fed.Appx. 12, 13 (2d Cir. 2013). However, it does not appear that Plaintiff has pleaded any ongoing constitutional violation. This limited exception to state employees' Eleventh Amendment immunity is therefore inapplicable, and the § 1983 claims against Defendants in their official capacity are therefore barred.

## II.    ADA Claims

In his second claim for relief, Plaintiff alleges that Defendants have violated Title II of the ADA, 42 U.S.C. § 12132. (Am. Compl. ¶ 53.) Title II provides in relevant part that: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *Tennessee v. Lane*, 541 U.S. 509, 513 (2004). To establish a violation of Title II, plaintiff must show that: (1) he or she is a qualified individual with a disability; (2) the defendants are subject to the ADA; and (3) the plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disabilities." *Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009).

For the purposes of this motion, Defendants only challenge the third element of Plaintiff's ADA claim: that any denials of access have been "*by reason of* [Plaintiff's] disability." *Shomo*, 579 F.3d at 185 (emphasis added). "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). Defendants note that (1) Plaintiff has not even alleged that any Defendants were aware of his disability; and (2) no allegations support the belief that

Defendants acted with Plaintiff's alleged disability in mind.  The Court agrees; Plaintiff's

allegation that he "believed that because of his disability, he was being discriminated against,"

(Am. Compl. ¶ 32.), without more, does not suffice to allege intentional discrimination or

disparate treatment.  Instead, Plaintiff premises his claims on the theories of disparate impact and

failure to make reasonable accommodation.

### a. Disparate Impact

To establish a prima facie case under a disparate impact theory, plaintiff must

demonstrate "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly

adverse or disproportionate impact on persons of a particular type produced by the defendant's

facially neutral acts or practices."  *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir.

2016) (quoting *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 574–75 (2d Cir. 2003)

(emphasis omitted)).  While Defendants cite *Mount Vernon School District* for the proposition

that "plaintiffs are ordinarily required to include statistical evidence to show disparity in outcome

between groups," 837 F.3d 152, 158 (quoting *Tsombanidis*, 352 F.3d at 575), this quote is taken

out of context.  Both *Mount Vernon School District* and *Tsombanidis* addressed the sufficiency

of claims at the summary judgment stage, not at the pleadings stage.  "Nevertheless, it is

reasonable to expect that plaintiffs pleading disparate impact claims must include at least one

allegation that raises an inference of such disparity—one sufficient to put the defendants on

notice regarding the basis for plaintiffs' belief in a disparate effect.  *L.C. v. LeFrak Org., Inc.*,

987 F. Supp. 2d 391, 402 (S.D.N.Y. 2013).

Here, Plaintiff has identified the issuance of no contact orders as an outwardly neutral

practice, satisfying the first element.  As to the allegations of disparity, Plaintiff argues that even

if the process for issuing no contact orders were equally applied to nondisabled students, due to

Plaintiff's disability, the process caused an adverse impact on Plaintiff and his ability to benefit

from SUNY Purchase's services.  (*See* Plaintiff's Memorandum of Law in Opposition ("Pl.

Opp."), ECF No. 33, at 11; Am Compl. ¶¶ 44–52.)  Although the Amended Complaint only

mentions Plaintiff as an affected student, it is a reasonable inference that students with his

particular type of disability were adversely affected by SUNY Purchase's practice of issuing no

contact orders.  (*See* Am Compl. ¶¶ 44–52.)  The Court finds that at this early stage, this claim is

sufficiently pleaded.

### b.  Failure to Accommodate

"The ADA mandates reasonable accommodation of people with disabilities in order to

put them on an even playing field with the non-disabled."  *Felix v. New York City Transit Auth.*,

324 F.3d 102, 107 (2d Cir. 2003).  A reasonable accommodation "gives the otherwise qualified

plaintiff with disabilities 'meaningful access' to the program or services sought."  *Henrietta D. v.

Bloomberg*, 331 F.3d 261, 282 (2d Cir. 2003) (quoting *Alexander v. Choate*, 469 U.S. 287, 301,

105 S.Ct. 712, 83 L.Ed.2d 661 (1985).  "[T]he question of what constitutes a reasonable

accommodation under the ADA 'requires a fact-specific, individualized analysis of the disabled

individual's circumstances and the accommodations that might allow him to meet the program's

standards.'"  *Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 165 (2d Cir. 2013)

(quoting *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004)).  "Quite simply, the

demonstration that a disability makes it difficult for a plaintiff to access benefits that are

available to both those with and without disabilities is sufficient to sustain a claim for a

reasonable accommodation."  *Henrietta,* 331 F.3d at 277.

The Amended Complaint specifically alleges that Defendants "did not take into account

[Plaintiff's] disability when issuing the no contact orders, nor did they consider whether the no

contact orders were being requested in an effort to tease and bully [Plaintiff] because of his disability." (Am. Comp. ¶ 51.) Plaintiff further alleges that Defendants "took no steps to accommodate [Plaintiff's] disability when issuing the no contact orders." (*Id.* ¶ 52.) Taken together with the specific allegations regarding how Plaintiff's disability makes it difficult for him to avail himself of the facilities at SUNY Purchase (¶¶ 43–50), the Court finds these allegations are sufficient to sustain a claim for a reasonable accommodation. *See Henrietta,* 331 F.3d at 277; *see also Schine by Short v. New York State Office for People with Developmental Disabilities*, No. 15CV5870SJFSIL, 2017 WL 9485650, at *8 (E.D.N.Y. Jan. 5, 2017), *report and recommendation adopted*, No. 15CV5870SJFSIL, 2017 WL 1232530 (E.D.N.Y. Mar. 31, 2017) (finding plaintiff clearly alleged that "due to the contours of his disability he is not receiving meaningful access to his benefits as would other disabled individuals without his specific set of limitations.").

### c. Monetary Damages and Sovereign Immunity Regarding ADA Claims

As discussed above, it is well-established that § 1983 was not intended to abrogate a state's sovereign immunity. *Mamot*, 367 F. App'x at 192. The question the Court must now address is whether the state is also immune from suit regarding ADA Title II violations.

Plaintiff seeks damages in excess of $100,000. (Am. Compl. ¶ 55.) For some time in this Circuit, a plaintiff seeking monetary damages against a state university to remedy an alleged Title II violation was required to show "not only that there was a violation, but that such violation was motivated by either discriminatory animus or ill will stemming from plaintiff's disability." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 89 (2d Cir. 2004) (citing *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 2001)). The rationale for this rule was that Title II's monetary claims against the states needed to "be limited so as to comport

with Congress's § 5 authority." *Garcia*, 280 F.3d at 111.  Under § 5 of the Fourteenth

Amendment ("Section 5"), Congress can abrogate states' sovereign immunity to enforce the

substantive rights guaranteed by the Fourteenth Amendment.  *See Lane*, 541 U.S. at 518.

Although "Congress has unambiguously purported to abrogate states' immunity from Title II

claims," *Bolmer v. Oliveira*, 594 F.3d 134, 146 (2d Cir. 2010), the Second Circuit found in

*Garcia* that "Congress had exceeded its [Section 5] authority in enacting Title II, but that Title II

suits could be limited to circumstances in which it had not."  *Id.*

   In the years following *Powell* and *Garcia*, however, the Supreme Court's opinion in

*United States v. Georgia*, 546 U.S. 151 (2006), "has call[ed] *Garcia*'s validity into question" and

suggested that ADA claims for damages may proceed under expanded circumstances.  *Dean v.*

*Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 194 (2d Cir. 2015).  In light of

this development, the Second Circuit in *Dean* left open the question of whether Congress validly

abrogated state sovereign immunity under Title II of the ADA.  *Id*. at 193–95 ("We express no

position as to the question of whether Congress has validly abrogated sovereign immunity in the

context of discrimination in access to public education on the basis of disability.").  Rather, the

Second Circuit instructed that district courts must apply the tripartite test articulated in *Georgia*.

*Id.* at 195.  Thus, the Court is tasked with determining:

> on a claim-by-claim basis, (1) which aspects of the State's alleged conduct
> violated Title II; (2) to what extent such misconduct also violated the Fourteenth
> Amendment; and (3) insofar as such misconduct violated Title II but did not
> violate the Fourteenth Amendment, whether Congress's purported abrogation of
> sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* (quoting *Georgia*, 546 U.S. at 159).

### i.   *Georgia* Analysis

   *First*, as stated above, the Court finds that SUNY Purchase's alleged practice of issuing

no contact orders without consideration of students' disabilities violated Title II.

*Second*, the Court must consider the extent to which such conduct also violated the Fourteenth Amendment.  As discussed above, the Court finds that Plaintiff has failed to state a due process violation.

*Third*, because the alleged conduct violated Title II but did not violate the Fourteenth Amendment, the Court must assess whether Congress's purported abrogation of sovereign immunity is nevertheless a valid exercise of Congressional power under Section 5 in the context of access of the disabled to public education.  *See Goonewardena v. New York*, 475 F. Supp. 2d 310, 326 (S.D.N.Y. 2007).  An exercise of Section 5 power is valid where there is "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end."  *City of Boerne v. Flores*, 521 U.S. 507, 508 (1997).  In applying the "congruence and proportionality" inquiry, the Eleventh, Fourth, First and Third Circuits "have all concluded that Title II is a congruent and proportional response to the danger of unconstitutional discrimination in public education based on disability and that abrogation is appropriate."  *Goonewardena*, 475 F. Supp. 2d at 326.[3]

This Court is persuaded by the reasoning in those opinions: "By prohibiting insubstantial reasons for denying accommodation to the disabled, Title II prevents invidious discrimination and unconstitutional treatment in the actions of state officials exercising discretionary powers over disabled students."  *Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 959 (11th Cir. 2005) (citing *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 736, 123 S.Ct. 1972, 1982, 155 L.Ed.2d 953 (2003)).  The Court agrees that "Title II's prophylactic measures

---

[3] *See Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 959 (11th Cir. 2005); *Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 490 (4th Cir. 2005); *Toledo v. Sanchez*, 454 F.3d 24, 40 (1st Cir. 2006); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 555-56 (3d Cir. 2007); *see also Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791 (9th Cir.2004) (upholding Title II's abrogation in all applications), *cert. denied*, 546 U.S. 1137, 126 S.Ct. 1140, 163 L.Ed.2d 999 (2006).

are justified by the persistent pattern of exclusion and irrational treatment of disabled students in public education, coupled with the gravity of the harm worked by such discrimination." *Toledo v. Sanchez*, 454 F.3d 24, 40 (1st Cir. 2006). Accordingly, the Court finds that "abrogation under Title II is a congruent and proportional response to the history of discrimination against the disabled in access to education." *Goonewardena*, 475 F. Supp. 2d at 326. Plaintiff's ADA claims for monetary damages shall therefore not be dismissed on the ground of sovereign immunity.

### d. Claims Against Defendants in Their Individual Capacities

The Court notes that Title II of the ADA does not "provid[e] for individual capacity suits against state officials." *Garcia v. Health Science Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *see Dean*, 804 F.3d at 185 n.2; *Morales*, 22 F. Supp. 3d at 271; *Keitt v. New York City*, 882 F. Supp. 2d 412, 426 (S.D.N.Y. 2011). Accordingly, to the extent that Plaintiff has sued Defendants in their individual capacities under the ADA, any such claim must be dismissed with prejudice. Plaintiff's ADA claim may proceed against Defendants in their official capacities. *See Goonewardena*, 475 F. Supp. 2d at 327 (holding sovereign immunity "does not shield the individual defendants in their official capacities" from ADA claims).

### III.   Claim for Injunctive Relief Against Defendant Stammer

Defendants argue that any claims against Defendant Stammer cannot proceed because he does not have the power or authority to implement the relief requested. *See Shipman v. New York State Office of Persons with Developmental Disabilities*, No. 11 CIV. 2780 GBD FM, 2012 WL 1034903, at *3 (S.D.N.Y. Mar. 26, 2012) (granting 12(b)(6) motion to dismiss because, *inter alia*, "plaintiff cannot proceed on his request for reinstatement because he has failed to allege that any individual defendant has the authority to reinstate plaintiff.") (citing *Perciballi v. New*

18

*York*, No. 09 Civ. 6933(WHP), 2010 WL 3958731, at *4 (S.D.N.Y. Sept. 29, 2010)).  Here, Plaintiff does not specifically allege that Defendant Stammer has the authority to effectuate any of the injunctive relief requested.  (*See* Am. Compl. ¶ 5.)  Moreover, Plaintiff has not contested this challenge in his briefing.[4]  Accordingly, Plaintiff's claim for injunctive relief against Defendant Stammer is dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Because Plaintiff has failed to allege that Defendants acted in bad faith, with discriminatory animus, or ill will, Plaintiff's due process claims based on a protected property interest are dismissed *without* prejudice.  The following claims are dismissed *with* prejudice:

- Plaintiff's due process claims based on a protected liberty interest;

- Plaintiff's due process claims against Defendants in their official capacities;

- Plaintiff's ADA claims against Defendants in their individual capacities; and

- Plaintiff's claim for injunctive relief against Defendant Stammer.

The following claims remain:

- Plaintiff's ADA claim for monetary relief against Defendant Stammer in his official capacity; and

- Plaintiff's ADA claims for monetary and equitable relief against Defendants Bice and Balascio in their official capacities.

---

[4] It is well-settled that the failure to oppose an argument raised in a motion to dismiss is deemed a concession of the argument and abandonment of the claims.  *See, e.g., Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44 (2d Cir. 2018) ("We affirm the District Court's dismissal of those claims on the ground that they were 'abandoned' by Wilkov when she failed to oppose them in her opposition to Ameriprise's motion to dismiss."); *Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313 (S.D.N.Y. 2018) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim.").

Plaintiff may file a Second Amended Complaint consistent with this Opinion on or before November 16, 2020, should he choose to reassert any claim dismissed without prejudice.   If Plaintiff elects to file a Second Amended Complaint, Defendants shall have thirty days from the date of Plaintiff's filing to respond.

If Plaintiff does not file a Second Amended Complaint by November 16, 2020, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice.   In that case, Defendants are directed to file an answer as to the surviving claims of the Amended Complaint on or before December 16, 2020.   The parties are directed to confer, complete, and submit to the Court the attached case management plan on or before January 6, 2021.

Accordingly, the Clerk of the Court is respectfully directed to terminate Defendants' Motion to Dismiss at ECF No. 29.


Dated:    September 16, 2020                                     SO ORDERED:
                White Plains, New York

                                                                        _____
                                                                        NELSON S. ROMÁN
                                                                        United States District Judge

UNITED STATES DISTRICT COURT                                    Rev. May 2014
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x


                                                   **CIVIL CASE DISCOVERY PLAN**
                                  Plaintiff(s),    **AND SCHEDULING ORDER**

          - against -


                                  Defendant(s).    _____ CV _____ (NSR)


------------------------------------------------------------x

      This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with
counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.      All parties [consent] [do not consent] to conducting all further proceedings before
a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).
The parties are free to withhold consent without adverse substantive consequences.
(If all parties consent, the remaining paragraphs of this form need not be
completed.)

2.      This case [is] [is not] to be tried to a jury.

3.      Joinder of additional parties must be accomplished by _____.

4.      Amended pleadings may be filed until _____. Any party
seeking to amend its pleadings after that date must seek leave of court via motion.

5.      Interrogatories shall be served no later than _____, and responses
thereto shall be served within thirty (30) days thereafter.  The provisions of Local
Civil Rule 33.3 [shall] [shall not] apply to this case.

6.      First request for production of documents, if any, shall be served no later than
_____.

7.      Non-expert depositions shall be completed by _____.

      a.      Unless counsel agree otherwise or the Court so orders, depositions shall not
be held until all parties have responded to any first requests for production
of documents.

      b.      Depositions shall proceed concurrently.

      c.      Whenever possible, unless counsel agree otherwise or the Court so orders,

non-party depositions shall follow party depositions.

8.     Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.     Requests to Admit, if any, shall be served no later than _____.

10.    Expert reports shall be served no later than _____.

11.    Rebuttal expert reports shall be served no later than _____.

12.    Expert depositions shall be completed by _____.

13.    Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.    **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.    Any motions shall be filed in accordance with the Court's Individual Practices.

16.    This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.    The Magistrate Judge assigned to this case is the Hon. _____.

18.    If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.    The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


SO ORDERED.

Dated: White Plains, New York
       _____


                                              _____
                                              Nelson S. Román, U.S. District Judge