

# RMF
## RUSKINMOSCOUFALTISCHEK P.C.
*Counselors at Law*

Writer's Direct Dial: (516) 663-6515
Writer's Direct Fax: (516) 663-6715
Writer's E-Mail: emurray@rmfpc.com

July 2, 2021

**<u>By ECF</u>**

Hon. Andrew E. Krause
United States Magistrate Judge
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:    *Doherty v. Bice, et al.*
            <u>Docket No. 18 Civ. 10898 (NSR)(AEK)</u>

Dear Judge Krause:

      I am a partner in Ruskin Moscou Faltischek, P.C., attorney for plaintiff Jason Doherty. I am writing pursuant to Your Honor's directions at the June 7, 2021 conference to provide supplemental support for plaintiff's position that defendants' request for authorizations for all of plaintiff's mental health providers should be rejected.

      Defendants contend that plaintiff's mental health records should be provided because they are relevant to establish an element of his case, specifically that plaintiff is a qualified individual with a disability so as to be protected by the Americans with Disabilities Act ("ADA"). Defendants also argue that plaintiff's mental health records are relevant to the issue of the impact of defendants' conduct on plaintiff. As fully set forth below, as a result of the 2008 amendments to the ADA, and the relevant regulations, together with recent case law with regard to the disclosure of mental health records, demonstrate that defendants' contentions are without merit.

      In *Glaser v. Gap Inc.*, 994 F. Supp.2d 569, 574 (S.D.N.Y. 2014), an action was brought by an individual with Autism against his former employer, and included claims under the ADA. The Court refused to dismiss the action and explained that the 2008 amendments to the ADA "drastically altered the manner in which the phrases 'substantially limit' and 'major life activity' should be construed". The Court also explained that the 2008 legislation was intended to overturn judicial decisions that had "improperly narrowed the scope of protections under the ADA". Further, the Court stated that the definition of a disability "shall be construed in favor of broad coverage", and observed that among the impairments listed in regulations that should "easily" be determined to be a disability under the ADA include "Autism".



July 2, 2021
Page 2

The regulations promulgated under the ADA as amended (29 C.F.R. §1630.2) provide:

(3) Predictable assessments -

(i) The principles set forth in paragraphs (j)(1)(i) through (ix) of this section are intended to provide for more generous coverage and application of the ADA's prohibition on discrimination through a framework that is predictable, consistent, and workable for all individuals and entities with rights and responsibilities under the ADA as amended.

(ii) Applying the principles set forth in paragraphs (j)(1)(i) through (ix) of this section, the individualized assessment of some types of impairments will, in virtually all cases, result in a determination of coverage under paragraphs (g)(1)(i) (the "actual disability" prong) or (g)(1)(ii) (the "record of" prong) of this section. **Given their inherent nature, these types of impairments will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity. Therefore, with respect to these types of impairments, the necessary individualized assessment should be particularly simple and straightforward.**

(iii) For example, applying the principles set forth in paragraphs (j)(1)(i) through (ix) of this section, **it should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated**: Deafness substantially limits hearing; blindness substantially limits seeing; an intellectual disability (formerly termed mental retardation) substantially limits brain function; partially or completely missing limbs or mobility impairments requiring the use of a wheelchair substantially limit musculoskeletal function; **autism substantially limits brain function**; cancer substantially limits normal cell growth; cerebral palsy substantially limits brain function; diabetes substantially limits endocrine function; epilepsy substantially limits neurological function; Human Immunodeficiency Virus (HIV) infection substantially limits immune function; multiple sclerosis substantially limits neurological function; muscular dystrophy substantially limits neurological function; and major depressive disorder, bipolar disorder, post-traumatic stress disorder, obsessive compulsive disorder, and schizophrenia substantially limit brain function. The types of impairments described in



July 2, 2021
Page 3

> this section may substantially limit additional major life activities not
> explicitly listed above. (Emphasis supplied).

The Second Circuit also expressed skepticism of a determination that an individual with Autism would not be considered disabled under the ADA and observed that a plaintiff can establish coverage under the ADA by demonstrating a diagnosis of Autism in connection with an Individual Education Plan ("IEP") by a school district. In *Rodriguez v. Village Green Realty, Inc.*, 788 F.3d 31 (2d Cir. 2015), the District Court's granting of summary judgment dismissing a Fair Housing Act claim based on the purported failure to submit proof that a child was disabled was reversed. The Second Circuit observed that Autism "is a neurological and developmental disorder that 'affects how a person acts and interacts with others, communicates, and learns'". The Second Circuit then held that evidence that the plaintiff was provided with an IEP, and the services provided under the IEP would reflect the extent of the child's disability.

Under New York's *Education Law*, a school district in which an individual resides is responsible for the disabled individual's education until he or she reaches the age of twenty-one. Here, plaintiff was under the age of twenty-one when the incident that is at the heart of this matter occurred. Accordingly, his IEPs will reflect the nature of plaintiff's disability, and would not involve the gross invasion of privacy that requiring the disclosure of records from confidential psychiatric counseling would cause.

As for the cases relied upon by defendants, initially it should be noted that a number of them were decided before the 2008 amendment to the ADA and have little relevance. *See, i.e., Douglas v. Victor Capital Group*, 21 F. Supp.2d 379 (S.D.N.Y. 1998); *Sussle v. Sirina Protection Systems Corp.*, 269 F. Supp.2d 285 (S.D.N.Y. 2003); *Sarko v. Penn-Del Directory Company*, 170 F.R.D. 127 (E.D. Pa 1997), *aff'd*, 189 F.3d 464 (3d Cir. 1999); *Wynne v. Loyola University of Chicago*, No. 97 C 06418, 1999 WL 759401 (N.D. Ill. Sept. 3 1999). And, with regard to defendants' reliance on *McElwee v. County of Orange*, No. 10 Civ. 00138 (KTD), 2011 WL 4576123 (S.D.N.Y. Sept. 30, 2011), to argue that plaintiff's diagnosis of Autism doesn't necessarily mean that plaintiff is disabled under the ADA, defendants fail to cite the Second Circuit decision in that case which cast serious doubt with the District Court's holding in that regard. *McElwee v. County of Orange*, 700 F.3d 635 (2d Cir. 2012).

In *McElwee*, the District Court granted summary judgment dismissing plaintiff's claims under ADA on a number of grounds, including that plaintiff did not submit sufficient proof of his disability. The Second Circuit upheld the granting of summary judgment because plaintiff's wrongful conduct of sexual harassment justified his termination from a volunteer program, but with regard to the ground for dismissal based on lack of proof of a disability, the Second Circuit stated:



> The district court found that McElwee was not substantially limited in the major life activity of interacting with others and concluded that McElwee was not disabled. *See McElwee*, 2011 WL 4576123, at 7, 2011 U.S. Dist. LEXIS 114663, at *20. On appeal, McElwee argues that the district court erred by failing to consider the ADA Amendments Act of 2008 ("ADAAA"), Pub.L. No. 110-325, 122 Stat. 3553 (2008), which amended the ADA to provide that the definition of "disability" shall be construed broadly "to the maximum extent permitted by the terms of this chapter" and "[t]he term 'substantially limits' shall be interpreted consistently with the findings and purposes of the [ADAAA]." 42 U.S.C. §12102(4)(A), (B). Similarly, the *amici curiae* argue that, in light of the ADAAA, the district court erred in concluding that McElwee is not disabled.
>
> Both McElwee and *amici* raise fair concerns as to whether the district court erred in not addressing whether McElwee was substantially limited in the major life activities of working, caring for himself, communicating, thinking, and brain function. *See* 42 U.S.C. §12102(2) (providing that "major life activities include, but are not limited to" caring for oneself, learning, concentrating, thinking, communicating, working, and the operation of major bodily functions such as brain function); 29 C.F.R. §1630.2(j)(1)(i) (instructing courts to construe the term "substantially limits" broadly); *id.* **§1630.2(j)(3)(iii) (specifically identifying autism as an impairment that substantially limits brain function in virtually all cases)**. Nonetheless, we need not decide whether the district court erred in finding McElwee was not disabled because even assuming *arguendo* that a reasonable jury could find McElwee disabled, the County is entitled to summary judgment for the reasons set forth below. (Emphasis supplied).

Plaintiff has been diagnosed with Autism, has been the subject of IEPs, and SUNY Purchase, itself, recognized plaintiff's disability in providing him with testing accommodations. In fact, defendants apparently do not dispute this diagnosis. See Transcript from June 7, 2021 Conference, pp5-7. There is simply no reason why defendants should be able to probe through plaintiff's discussions with his psychiatrist and psychologist, involving discussions of a range of personal issues that he thought were confidential, in order to prove that he was disabled under the ADA. Plaintiff is Autistic, and as a result, the individualized "assessment [under the ADA] should be particularly simple and straightforward", and given the availability of IEPs should not require the invasion of privacy of plaintiff having to disclose all of his personal mental health records.



**RUSKINMOSCOUFALTISCHEK** P.C.
*Counselors at Law*

July 2, 2021
Page 5

As for defendants' contention that they need to have access to plaintiff's psychological records in order to determine the impact of the alleged wrongful conduct on plaintiff, this is simply a way to get around controlling case law which clearly holds that when a plaintiff seeks only garden variety emotional distress, he does not put in issue his psychological condition. See discussion in prior letter submission (Dkt. No. 48) of *Misas v. North-Shore Long Island Jewish Health System*, No. 14-cv-8787 (ACL) (DFC), 2016 WL 4082718, *4 (S.D.N.Y. July 25, 2016), and other authorities.

In fact, even a case relied upon by defendants, *Sobel v. Community Access Inc.*, No. 03Civ. 5642 (LAK)(MHD), 2007 WL 2710105 (S.D.N.Y. Sept. 11, 2007), is consistent on limiting discovery of mental health records when a plaintiff seeks recovery for only garden variety emotional distress. In *Sobel*, the Court refused to order the unlimited disclosure of a plaintiff's mental health records because it was unclear whether plaintiff was alleging more than garden-variety emotional distress. Here, plaintiff has specifically represented that he is not seeking anything other than garden-variety emotional distress damages.

Courts have increasingly protected discovery of mental health records, recognizing that they can contain the most private and intimate details of one's life. Plaintiff is equally entitled to this protection and because he is Autistic does not mean he forfeits his privacy over his intimate feelings and concerns if he wants to seek redress for a violation of the ADA. If plaintiff was blind and was seeking garden-variety emotional distress in connection with violations of the ADA, would the plaintiff have to disclose his psychiatric records to show how the alleged wrongful conduct impacted that particular blind individual? Plaintiff felt discomfort and humiliation because he is a human being that happens to be Autistic, the same as a blind individual who may feel discomfort and humiliation by conduct that violates the ADA as a result of his blindness. A fishing expedition into plaintiff's mental health records is simply unneeded to determine how he was effected by defendants' conduct which can be explored through a deposition, and any purported need for these records does not outweigh plaintiff's privacy rights.

Respectfully,

E. Christopher Murray

ECM:emr

947272