UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

Doherty,

Plaintiff,

-against-

Bice et al.,

Defendants.
------------------------------------------------------------x

**DECISION AND ORDER**

18 Civ. 10898 (NSR) (AEK)

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

In this lawsuit alleging violations of 42 U.S.C. § 1983 and the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.*, Defendants seek documents regarding Plaintiff's mental health treatment, including releases to enable Defendants to obtain records from any relevant mental health treatment providers. *See* ECF No. 44. Plaintiff objected to the relevant document demands and interrogatories as "overbroad, irrelevant, and unduly burdensome," ECF No. 44-4 at 9; *see also* ECF No. 44-3 at 7, and maintains that mental health records are not discoverable here because Plaintiff is "not seeking damages related to any treatment by a medical or psychiatric professional for the conduct by defendants and is limiting any damages to garden variety emotional distress," ECF No. 48. Following a status conference and oral argument on this matter on June 7, 2021, the parties met and conferred further to narrow the scope of issues in dispute,[1] and filed supplemental submissions regarding the remaining issues. *See* ECF Nos. 49, 50.

[1] When Defendants first identified discovery disputes to be resolved, Defendants were also seeking records pertaining to Plaintiff's non-mental health medical providers. Defendants have since reported that following a June 11, 2021 meet and confer, "Plaintiff has agreed to identify the medical providers who treated Plaintiff between January 1, 2014 and the present, and

**1. General Standards for Discovery**

Rule 26 of the Federal Rules of Civil Procedure provides, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Moreover, "[a] party or any person from whom discovery is sought may move for a protective order," which may be issued upon a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense including ... forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1). "[T]he party seeking a protective order has the burden of showing that good cause exists for issuance of that order." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004). The Court has broad discretion "to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). The Court also has "broad discretion" in determining relevance for discovery purposes. *Michael Kors, L.L.C. v. Su Yan Ye*, No. 18-cv-2684 (KHP), 2019 WL 1517552, at *2 (S.D.N.Y. Apr. 8, 2019). Under the Federal Rules of Civil Procedure, relevance must be "'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-cv-9792 (WHP) (JCF), 2015 WL

---

to provide releases for his medical records from those providers." ECF No. 49 at 1 n.2. Accordingly, there is no need for the Court to reach that issue at this time.

7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)), *aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016).

**2. Standard for Discovery of Mental Health Records**

The Supreme Court has recognized a broad psychotherapist-patient privilege, holding that "confidential communications between a licensed psychotherapist and [his or her] patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). This privilege is "rooted in the imperative need for confidence and trust," as psychotherapy requires an environment "in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." *Id.* at 10; *see Doe v. Sarah Lawrence Coll.*, No. 19-cv-10028 (PMH) (JCM), 2021 WL 197132, at *3 (S.D.N.Y. Jan. 20, 2021). The decision whether to allow discovery into mental health records is therefore one that requires courts to exercise extreme sensitivity, as "the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Jaffee*, 518 U.S. at 10. The *Jaffee* Court specifically noted, however, that, "[l]ike other testimonial privileges, the patient may of course waive the protection" of the psychotherapist privilege. *Id.* at 15 n. 14. "For example, waiver occurs when a plaintiff puts his or her mental or emotional condition at issue in the case, by relying on that condition as an element of his or her claim or defense." *Doe*, 2021 WL 197132, at *4 (citing *Green v. St. Vincent's Med. Ctr.*, 252 F.R.D. 125, 127-28 (D. Conn. 2008); *Kerman v. City of New York*, No. 96-cv-7865 (LMM), 1997 WL 666261, at *3 (S.D.N.Y. Oct. 24, 1997)).

Additionally, there is the danger that allowing discovery into mental health records will lead to overly intrusive document demands and interrogatories from litigants; for example, defendants might "seek to have the privilege breached whenever there is a possibility that the

psychiatric records may be useful in testing the plaintiff's credibility or may have some other probative value." *In re Sims*, 534 F.3d 117, 141 (2d Cir. 2008). To avoid such a situation, the Second Circuit has held that a plaintiff who asserts only "garden variety" emotional distress damages does not waive the psychotherapist-patient privilege based solely on such "garden variety" damages claims.[2] *See id.* at 130; *In re Consol. RNC Cases*, No. 04-cv-7922 (RJS), 2009 WL 130178, at *6 (S.D.N.Y. Jan. 8, 2009); *Gropper v. David Ellis Real Estate, L.P.*, No. 13-cv-2068 (ALC) (JCF), 2014 WL 642970, at *2 (S.D.N.Y. Feb. 14, 2014).

### 3. Defendants' Request for Mental Health Records to Evaluate Plaintiff's Claim that He Is a Qualified Individual with a Disability

To establish a claim under Title II of the ADA, "a plaintiff must demonstrate (1) that [he or she] is a qualified individual with a disability; (2) that [he or she] was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [his or her] disability." *Tardif v. City of New York*, 991 F.3d 394, 404 (2d Cir. 2021) (quotations omitted). For the purpose of determining whether a plaintiff is a "qualified individual with a disability," the ADA defines "disability" to include, *inter alia*, "a physical or mental impairment that substantially limits one or more major life activities." *Hamilton v. Westchester County*, 3 F.4th 86, 92 (2d Cir. 2021) (quoting 42 U.S.C. § 12102(1)(A)).

Defendants assert that Plaintiff's mental health records should be provided because they are relevant to Plaintiff's claim that he is a qualified individual with a disability under the ADA.

---

[2] "Garden variety" damages are "claims for 'compensation for nothing more than the distress than any healthy, well-adjusted person would likely feel as a result of being so victimized . . . .'" *E.E.O.C. v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 121 (W.D.N.Y. 2009) (quoting *Kunstler v. City of New York*, No. 04-cv-1145 (RWS) (MHD), 2006 WL 2516625, at *7, *9 (S.D.N.Y. Aug. 29, 2006)).

*See* ECF No. 49 at 2. But the 2008 ADA Amendments Act ("ADAAA") and the accompanying regulations make clear that autism is a type of impairment that will "substantially limit brain function," and thus qualify an individual for protection under the ADA, *see* 29 C.F.R. § 1630.2, and the Second Circuit has explained that the regulations "specifically identify[] autism as an impairment that substantially limits brain function in virtually all cases," *McElwee v. County of Orange*, 700 F.3d 635, 643 (2d Cir. 2012). The ADAAA specifically stated that the definition of disability "shall be construed in favor of broad coverage . . . to the maximum extent permitted" under the ADA. 42 U.S.C. § 12102(4)(A); *see Hamilton*, 3 F.4th at 92 ("the principal purpose of the ADAAA was to overrule the Supreme Court's arguably narrow interpretation of what constitutes an ADA-qualifying disability . . . and to make clear that the substantial-limitation requirement in the definition of 'disability' is not an exacting one") (alteration and quotation marks omitted). Since the enactment of the ADAAA, courts in this district have recognized that autism "might also substantially limit major life activities other than those explicitly identified in the regulations." *Glaser v. Gap Inc.*, 994 F. Supp. 2d 569, 575 (S.D.N.Y. 2014).

Counsel for Defendants[3] noted during oral argument that Plaintiff's diagnosis of autism, while perhaps substantiated by past requests for accommodation, did not automatically make him a "qualified individual" under the ADA, as "there is a distinction between the diagnosis and the fact that the diagnosis presents an impairment that substantially limits one or more of the major life activities . . . ." Transcript ("Tr.") (ECF No. 49-1) at 6:11-14. Under the current regulations and *McElwee*, however, that latter point is squarely addressed: autism is an impairment that

[3] The transcript of the parties' June 7, 2021 oral argument erroneously states that the speaker is counsel for Plaintiff, Mr. Murray, but from context it is evident that the previous question was addressed to, and the speaker actually was, counsel for Defendants, Ms. Schwartz. *See* Tr. at 5:13-25; 6:1-18.

substantially limits brain function. *See* 700 F.3d at 643. Given the expressly permissive scope of the ADAAA, and the fact that the parties have now agreed to discovery of Plaintiff's non-mental health medical records, it is not necessary to allow discovery into Plaintiff's mental health records for the purposes of examining the question of whether Plaintiff is a qualified individual with a disability. Plaintiff has not waived the psychotherapist-patient privilege simply because he is an individual with autism who has raised a claim under the ADA. Moreover, because Defendants have other, less intrusive means of exploring this issue—both through medical records and through depositions—allowing discovery of mental health records for this particular purpose is not proportional to the needs of the case. Additionally, if Defendants believe at the conclusion of discovery that Plaintiff has failed to offer sufficient medical evidence substantiating his limitations and thus has not met his burden under the ADA, *see Grabin v. Marymount Manhattan Coll.*, No. 12-cv-3591 (KPF), 2014 WL 2592416, at *12 (S.D.N.Y. June 10, 2014), Defendants may move for summary judgment on that basis. In other words, *Plaintiff* may bear some risk for resisting discovery for this purpose. Accordingly, given the particular facts and circumstances presented here, Defendants cannot obtain discovery of Plaintiff's mental health records for the purposes of evaluating whether he is a qualified individual with a disability within the meaning of the ADA.

**4. Defendants' Request for Mental Health Records on the Ground that Plaintiff Has Put His Mental Health at Issue**

More complicated, however, is the question of whether Plaintiff has waived his right to privacy in his psychotherapy records by putting his mental health condition at issue in the manner in which he has pled his claims. Defendants cite multiple cases for the proposition that a plaintiff who brings an ADA claim based on an underlying mental health condition waives the psychotherapist-patient privilege. *See id.* at 3-4 (collecting cases). Notably, none of the cases

cited by Defendants involve a plaintiff who claimed a disability based on an autism diagnosis. *See Sarko v. Penn-Del Directory Co.*, 170 F.R.D. 127, 130 (E.D. Pa. 1997) (plaintiff suffered from clinical depression); *Cherkaoui v. City of Quincy*, No. 14-cv-10571, 2015 WL 4504937, at *2-*3 (D. Mass. July 23, 2015) (plaintiff suffered from Attention Deficit Hyperactivity Disorder ("ADHD") and depression); *Katz v. Nat'l Board of Med. Examiners*, 15-cv-1187, 2016 WL 2744823, at *3-*4 (M.D. Pa. May 10, 2016) (plaintiff suffered from bipolar disorder).

Indeed, this Court is not convinced that, simply by virtue of being autistic, a plaintiff automatically waives his or her right to privacy in all mental health records whenever he or she files a suit under the ADA. Autism "is a neurological and developmental disorder that affects how a person acts and interacts with others, communicates, and learns." *Rodriguez v. Vill. Green Realty*, 788 F.3d 31, 42 (2d Cir. 2015) (quotation marks omitted). A person's autism will shape his or her personal relationships and how that person perceives the world. As Plaintiff's counsel represented to the Court at the parties' conference on June 7, 2021, "if an autistic individual goes to see a psychologist, they're going to talk about, you know, a whole range of things, from girlfriends to family members. And the fact that the individual has autism kind of underlines that whole type of discussion." Tr. at 39:15-19. Treating autism as a mental health condition that automatically waives the psychotherapist-plaintiff privilege could potentially require the release of an autistic plaintiff's entire mental health history, simply because autism is an integral part of who he or she is. That danger exists here, and thus Defendants' request for all mental health records which "deal with the effects of Plaintiff's autism" is overly broad.

While not every autistic plaintiff necessarily puts his or her mental health condition at issue, there remains the question of whether Plaintiff in this case has done so by way of the allegations in his complaint. Plaintiff alleges that "*[a]s a result of the issuance of the no contact*

*orders and his disability*, [Plaintiff] suffers great anxiety and depression, has difficulty going to class or utilizing Purchase's facilities for fear of being arrested, and is afraid to socialize with other students." Am. Compl. (ECF No. 17) ¶ 34 (emphasis added). In addition the amended complaint states that Plaintiff "suffers from severe anxiety, especially in social situations, or adversarial or disciplinary circumstances." *Id.* ¶ 45; *see also id.* ¶ 47 ("[t]he issuance and existence of the no contact orders create great stress for [Plaintiff]"). These allegations identify specific mental health conditions—severe anxiety, depression, and "great stress" in particular situations—that Plaintiff alleges he suffers *as a result of Defendants' conduct*. These allegations constitute core elements of Plaintiff's ADA claim, and directly relate to the question of whether Defendants denied Plaintiff the opportunity to participate in or benefit from the facilities at SUNY Purchase. Accordingly, these allegations are sufficient to waive Plaintiff's psychotherapist-patient privilege with respect to certain mental health records, because Plaintiff has put his mental health condition at issue in this case. *See Doe*, 2021 WL 197132, at *4 ("waiver occurs when a plaintiff puts his or her mental or emotional condition at issue in the case by relying on that condition as an element of his or her claim or defense"); *Green*, 252 F.R.D. at 128 ("when a party puts his or her mental state at issue, his or her opponent has a right to conduct an inquiry into present *and* past communications between psychotherapist and patient"); *Milner v. City of Bristol*, No. 18-cv-1104, 2020 WL 6049261, at *4 (D. Conn. Oct. 13, 2020) (plaintiff who alleged that he was "injured physically, mentally and emotionally and continues to live in fear of police officers" placed his physical and mental health at issue).

Defendants are permitted to inquire, to a limited extent, into Plaintiff's mental health records that address any severe anxiety or depression Plaintiff experiences when socializing with peers, or in disciplinary or adversarial situations. This permission should be narrowly construed,

however, and is not "a license to rummage through all aspects of the plaintiff's life." *Evanko v. Elec. Sys. Assoc., Inc.*, No. 91-cv-2851, 1993 WL 14458, at *2 (S.D.N.Y. Jan. 8, 1993). Plaintiff is not required to produce *all* of his mental health records, and the Court is cognizant of Plaintiff's stated concerns about disclosing the contents of those records as they might relate to his interpersonal and family relationships. *See* Tr. at 17:13-19. This order is thus limited in scope to the particular aspects of Plaintiff's mental health that he has specifically put at issue through his complaint—information unrelated to the allegations in the complaint need not be produced.

Plaintiff asserts that since he has provided (or has agreed to provide) documentation regarding his request for accommodations from SUNY Purchase, and records regarding his grade school Individualized Education Program ("IEP"), further discovery into his mental health records is unnecessary. *See* ECF No. 48 at 1-2; Tr. at 15:2-25, 16:1-12; ECF No. 50 at 3-4. But the limited discovery authorized here is not for the purposes of establishing Plaintiff's autism diagnosis, but rather to inquire into Plaintiff's allegations that severe anxiety and depression have been caused by Defendants' conduct. While requests for accommodations and IEPs may well include medical and mental health documentation to establish the subject's disability, their primary purpose is to address the subject's needs in the classroom, and not the more wide-ranging social and emotional issues that would be addressed in psychotherapy.

Similarly, it is not enough for Plaintiff to argue that since he is not seeking damages for any consequences arising after Defendants' conduct, he should not have to disclose any mental health records. *See* ECF No. 50 at 5. Plaintiff's allegations regarding his mental health condition do pertain to damages alone, but also to Defendants' liability. *See* Tr. at 26:3-25, 27:1-13. Even if Plaintiff has not seen a mental health provider since the events of this case occurred,

*see* Tr. at 27:21-23. Defendants are entitled to explore Plaintiff's prior mental health history in order to evaluate the allegation that Plaintiff's anxiety and depression were *caused* by the issuance of the no-contact orders. *See* Tr. at 28:8-22; *Sidor v. Reno*, No. 95-cv-9588 (KMW), 1998 WL 164823, at * 2 (S.D.N.Y. Apr. 7, 1998) ("Defense counsel has a right to inquire into plaintiffs' pasts for the purpose of showing that their emotional distress was caused at least in part by events and circumstances that were not job related.") (quotations omitted).

Plaintiff has also argued that discovery of Plaintiff's mental health records should be limited because he is only seeking garden variety emotional distress damages. *See* ECF No. 48 at 1; ECF No. 50 at 5. It is true that a claim for garden variety damages does not, by itself, waive the psychotherapist-patient privilege, and Plaintiff's limited damages claims are not a basis for disclosure of his mental health records. *See In re Sims*, 534 F.3d at 130. Rather, Plaintiff's mental health will inevitably factor into an evaluation of whether Defendants are liable for a violation of the ADA. For this reason, limited discovery into the discrete category of Plaintiff's mental health records described in this order is appropriate. Plaintiff's understandable and legitimate privacy concerns are mitigated here by the Confidentiality Stipulation and Protective Order agreed to by the parties. ECF No. 47.

While the Court anticipates that the parties will be able to comply with this order without further judicial intervention, the Court recognizes that it may be necessary to engage in *in camera* review of certain records to the extent it is necessary to resolve future disputes regarding the contours of the order.

**5. Conclusion**

For the foregoing reasons, Defendants' demands for the production of mental health records are GRANTED, and Plaintiff's objections are OVERRULED, subject to the limitations set forth herein.

Dated: September 15, 2021
White Plains, New York

**SO ORDERED.**

ANDREW E. KRAUSE
United States Magistrate Judge