UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
JASON DOHERTY,

|  |  |  |
|---|---|---|
|  | Plaintiff, | Docket No.<br>18-cv-10898 (NSR) |

- against -

PATRICIA BICE, individually and as Dean of Student
Affairs for Purchase College, State University of New
York; JARED STAMMER, individually and as Conduct
Officer for Purchase College, State University of New
York; and QUI QUI BALASCIO, individually and as
Associate Dean for Student Affairs for Purchase College,
State University of New York,

                                                    Defendants.
------------------------------------------------------------------ X

## PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER

### Preliminary Statement

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, plaintiff objects to Docket Order 55, dated September 15, 2021 and entered on September 16, 2021, of the Honorable Andrew E. Krause, United States Magistrate Judge, to the extent that it orders the production of plaintiff's mental health records.  The Magistrate Judge erred in ordering the production of the mental health records of plaintiff, an Autistic individual, that relate to his anxiety and depression in certain situations.  The Magistrate found that plaintiff's mental health records were not necessary for plaintiff to prove that he had a disability under the Americans With Disabilities Act ("ADA"), relying on the authority that "virtually always" an Autistic individual has an impairment that substantially limits brain function.  In addition, plaintiff has also authorized the production of his Individual Education Plan ("IEP") adopted because of his Autism, and SUNY Purchase College has already acknowledged plaintiff's disability.

Nonetheless, the Magistrate directed that plaintiff produce "mental health records that address any severe anxiety or depression plaintiff experiences when socializing with peers or in disciplinary or adversarial situations". The Magistrate determined that plaintiff, who claims only garden variety emotional distress, placed these records at issue because he claims that the actions of the defendants caused him anxiety and depression. However, under applicable case law, that a plaintiff alleges anxiety and depression as a result of the conduct of a defendant, does not, in and of itself, place his or her mental health records at issue when the plaintiff is seeking only garden variety emotional distress damages. Further, there is no basis to establish a separate rule for plaintiffs who are Autistic, as the Magistrate's Order seems to do. Accordingly, the Magistrate's Order is contrary to law, and should be rescinded, stayed or found in error.

## Standard of Review

The District Court reviews a Magistrate's order on a nondispositive issue for clear error. *Sekisui American Corp. v. Hart*, 945 F. Supp.2d 494 (S.D.N.Y. 2013). Clear error includes orders that fail to apply or misapply relevant statutes, case law or rules of procedure. The law in the Second Circuit is that a determination that Autistic individuals, like plaintiff, are disabled within the meaning of the ADA does not require much factual inquiry. The law in this Circuit is also that when only garden-variety mental anguish damages are sought, a plaintiff does not place in controversy his prior mental health records. Accordingly, the Magistrate's order is contrary to established law.

## POINT I

### PLAINTIFF'S MENTAL HEALTH RECORDS ARE NOT NECESSARY TO DETERMINE THAT THE PLAINTIFF HAS A DISABIITY UNDER THE AMERICANS WITH DISABILITIES ACT

Plaintiff claims that defendants' issuance of no contact orders to him was done without consideration of his disability, specifically that he is on the Autism spectrum. In *Glaser v. Gap Inc.*, 994 F. Supp.2d 569, 574 (S.D.N.Y. 2014), an action was brought by an individual with Autism against his former employer, and included claims under the ADA. The Court refused to dismiss the action for a lack of proof of a disability and explained that the 2008 amendments to the ADA "drastically altered the manner in which the phrases 'substantially limit' and 'major life activity' should be construed". The Court also explained that the 2008 legislation was intended to overturn judicial decisions that had "improperly narrowed the scope of protections under the ADA". Further, the Court stated that the definition of a disability "shall be construed in favor of broad coverage", and observed that among the impairments listed in regulations that should "easily" be determined to be a disability under the ADA include "Autism".

Those regulations promulgated under the ADA, as amended (29 C.F.R. §1630.2), provide:

> (3) Predictable assessments -
>
> (i)  The principles set forth in paragraphs (j)(1)(i) through (ix) of this section are intended to provide for more generous coverage and application of the ADA's prohibition on discrimination through a framework that is predictable, consistent, and workable for all individuals and entities with rights and responsibilities under the ADA as amended.
>
> (ii) Applying the principles set forth in paragraphs (j)(1)(i) through (ix) of this section, the individualized assessment of some types of impairments will, in virtually all cases, result in a determination of coverage under paragraphs (g)(1)(i) (the "actual disability" prong)  or (g)(1)(ii) (the

- 3 -

"record of" prong) of this section. **Given their inherent nature, these types of impairments will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity. Therefore, with respect to these types of impairments, the necessary individualized assessment should be particularly simple and straightforward.**

(iii)  For example, applying the principles set forth in paragraphs (j)(1)(i) through (ix) of this section, **it should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life  activities indicated**: Deafness substantially limits hearing; blindness substantially limits seeing; an intellectual disability (formerly termed mental retardation) substantially limits brain function; partially or completely missing limbs or mobility impairments requiring the use of a wheelchair substantially limit musculoskeletal function; **autism substantially limits brain function**; … The types of impairments described in this section may substantially limit additional major life activities not explicitly listed above. (Emphasis supplied).

The Second Circuit also expressed skepticism of a determination that an individual with Autism would not be considered disabled under the ADA and observed that a plaintiff can establish coverage under the ADA by demonstrating a diagnosis of Autism in connection with an IEP by a school district. In *Rodriguez v. Village Green Realty, Inc.*, 788 F.3d 31 (2d Cir. 2015), the District Court's granting of summary judgment dismissing a Fair Housing Act claim based on the purported failure to submit proof that a child was disabled was reversed. The Second Circuit observed that Autism "is a neurological and developmental disorder that 'affects how a person acts and interacts with others, communicates, and learns'". The Second Circuit then held that evidence that the plaintiff provided his IEP, and the services provided under the IEP would reflect the extent of the child's disability.

In *McElwee v. County of Orange*, 700 F.3d 635 (2d Cir. 2012), the District Court granted summary judgment dismissing plaintiff's claims under ADA on a number of grounds, including that plaintiff did not submit sufficient proof of his disability.  The Second Circuit upheld the granting of summary judgment because plaintiff's wrongful conduct of sexual harassment

justified his termination from a volunteer program, but with regard to the ground for dismissal

based on lack of proof of a disability, the Second Circuit stated:

> The district court found that McElwee was not substantially limited in the major life activity of interacting with others and concluded that McElwee was not disabled. *See McElwee*, 2011 WL 4576123, at *7, 2011 U.S. Dist. LEXIS 114663, at *20. On appeal, McElwee argues that the district court erred by failing to consider the ADA Amendments Act of 2008 ("ADAAA"), Pub.L. No. 110-325, 122 Stat. 3553 (2008), which amended the ADA to provide that the definition of "disability" shall be construed broadly "to the maximum extent permitted by the terms of this chapter" and "[t]he term 'substantially limits' shall be interpreted consistently with the findings and purposes of the [ADAAA]." 42 U.S.C. §12102(4)(A), (B). Similarly, the *amici curiae* argue that, in light of the ADAAA, the district court erred in concluding that McElwee is not disabled.
>
> Both McElwee and *amici* raise fair concerns as to whether the district court erred in not addressing whether McElwee was substantially limited in the major life activities of working, caring for himself, communicating, thinking, and brain function. *See* 42 U.S.C. §12102(2) (providing that "major life activities include, but are not limited to" caring for oneself, learning, concentrating, thinking, communicating, working, and the operation of major bodily functions such as brain function); 29 C.F.R. §1630.2(j)(1)(i) (instructing courts to construe the term "substantially limits" broadly); *id.* **§1630.2(j)(3)(iii) (specifically identifying autism as an impairment that substantially limits brain function in virtually all cases)**. Nonetheless, we need not decide whether the district court erred in finding McElwee was not disabled because even assuming *arguendo* that a reasonable jury could find McElwee disabled, the County is entitled to summary judgment for the reasons set forth below. (Emphasis supplied).

*Id.* at 642-43.

Here, plaintiff has provided authorizations for the disclosure of his IEP. Further, SUNY

Purchase, where the events in question occurred, has already acknowledged plaintiff's disability

by providing him with accommodations when he takes exams. Accordingly, the Magistrate

correctly held that plaintiff's mental health records were not necessary for plaintiff to establish

his disability. Nevertheless, the Magistrate held that plaintiff put his mental health records at

issue because he claimed that the no contact orders caused him anxiety and depression.

Whether the no contact order made plaintiff anxious or depressed is not an element of plaintiff's claim, and the only basis to require those mental health records be produced would be to show damages.  However, since plaintiff is seeking only garden-variety damages and does not claim he was treated by a mental health professional because of the conduct of defendants, his treatment by mental health professionals prior to the acts at issue should not be subjected to disclosure.

## POINT II

### SINCE PLAINTIFF HAS LIMITED HIS DAMAGE TO GARDEN VARIETY EMOTIONAL DISTRESS HIS PSYCHOLOGICAL RECORDS ARE NOT AT ISSUE

When a plaintiff seeks only garden variety emotional distress damages he has not placed his mental and physical health at issue and a defendant is not entitled to disclosure of the plaintiff's medical and psychiatric records.  For example, in *Misas v. North-Shore Long Island Jewish Health System*, No. 14-cv-8787 (ALC)(DFC), 2016 WL 4082718, *4 (S.D.N.Y. July 25, 2016), the Court squarely held that "[i]f plaintiffs seek only garden variety damages, then they need not provided medical corroboration for any alleged injury, nor can they be said to have put their entire physical and mental condition at issue".  The Court further explained that even though the plaintiffs alleged in the complaint that they suffered "severe and lasting embarrassment, emotional pain, inconvenience, [and] anguish", they did not open the door to the disclosure of mental health records. *See also*, *Brown v. Kelly*, No. 05 Civ. 5442 (SAS), 2007 WL 1138877 (S.D.N.Y. April 16, 2007); *In re Sims*, 534 F.3d 117 (2d Cir. 2008); *Sobel v. Community Access, Inc.*, 03 Civ. 5642 (LAK)(MHD), 2007 WL 2710105 (S.D.N.Y. Sept. 11, 2007).

Plaintiff has clearly represented that he is not seeking damages related to any treatment by a medical or psychiatric professional for the conduct by defendants and is limiting any

damages to garden variety emotional distress. Plaintiff did not seek counseling directly as a result of defendants' conduct, nor does he claim that defendants' conduct caused him any physical ailment. Accordingly, plaintiff has not waived his privilege regarding his psychiatrist and psychologist, and his mental health records should not be produced.

As for the Magistrate's determination that plaintiff alleged that he suffers from anxiety, depression and stress as a result of the no contact order, this in and of itself does not waive his right to the confidentiality of his mental health records. Plaintiff is not subject to a different standard because he is Autistic. Under the Magistrate's ruling, any plaintiff who alleges stress or anxiety would waive any objection to the disclosure of his mental health records, a position rejected by Courts in this Circuit.

## CONCLUSION

For the reasons set forth above, the Magistrate's order should be rescinded, stayed or found in error, and plaintiff should not be required to produce his mental health records.

Dated: Uniondale, New York
      September 29, 2021

RUSKIN MOSCOU FALTISCHEK, P.C.

By: _____
    E. Christopher Murray
    *Attorney for Plaintiff*
    1425 RXR Plaza
    East Tower, 15th Floor
    Uniondale, New York 11556
    (516) 663-6600

953400

- 7 -