USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/9/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON DOHERTY,

                      Plaintiff,

   -against-

PATRICIA BICE, individually and as Dean of Student Affairs at Purchase College, State University of New York; JARED STAMMER, individually and as Conduct Officer for Purchase College, State University of New York; and QUI QUI BALASCIO, individually and as Associate Dean for Student Affairs for Purchase College, State University of New York,

                      Defendants.

18-cv-10898 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Jason Doherty ("Plaintiff" or "Doherty") commenced the instant action on November 21, 2018. (*See* Complaint, ECF No. 1; Amended Complaint ("Am. Compl."), ECF No. 17.) Plaintiff alleges claims for equitable and monetary relief pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA") against Defendants Patricia Bice ("Bice") and Qui Qui Balascio ("Balascio") in their official capacities. Additionally, Plaintiff alleges a claim for only monetary relief pursuant to the ADA against Defendant Jared Stammer ("Stammer") in his official capacity.

    Before the Court is Defendants' motion for an order dismissing the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(c). (*See* ECF No. 84.) For the following reasons, Defendants' Motion is GRANTED and Plaintiff's claims are dismissed with prejudice.

1

## BACKGROUND

I.      **Factual Background**

The following facts are derived from the Amended Complaint and are taken as true and construed in the light most favorable to Plaintiff for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

a.  **SUNY Purchase's Freshman Orientation**

When the Amended Complaint was filed on March 13, 2019, Plaintiff was a nineteen-year-old student attending Purchase College, State University of New York ("SUNY Purchase"). (Am. Compl. ¶ 3.) Plaintiff has Asperger Syndrome and was classified as a disabled student. (*Id.* ¶ 7.) Prior to attending SUNY Purchase, Plaintiff participated in programs at Putnam Northern Westchester BOCES where he had contentious interactions with Casper Horsfield a/k/a Chelsea Horsfield ("Horsfield"). (*Id.* ¶ 9.)

Plaintiff began attending SUNY Purchase as a freshman and attended freshman orientation in August 2017. (*Id.* ¶ 10.) During the orientation period, Plaintiff met a number of other freshman students, including Alexa Newman ("Newman"). (*Id.* ¶ 11.) Plaintiff accompanied Newman to her room with other students, and was surprised to see Horsfield, who was Newman's roommate. (*Id.* ¶ 12.) Plaintiff exited the room with Newman and the other students, then attempted to re-enter it. (*Id.* ¶ 13.) At that moment, Horsfield yelled at Plaintiff to "get out." (*Id.*) When Plaintiff stepped away from the room, Horsfield closed the door and locked it. (*Id.* ¶ 14.)

A few minutes later, two campus police officers approached Plaintiff and his friend while they were standing in the hallway and asked for their IDs. (*Id.* at 15.) When Plaintiff asked the police officers what he did wrong, one of the officers yelled at him. (*Id.* ¶ 16.) This officer ordered

2

Plaintiff to leave and said that, if he failed to do so, the officer would arrest him, a restraining order against him would be issued, and he would not be allowed in the dorms. (*Id.*)

Plaintiff immediately left the building and called his mother. (*Id.* ¶ 17.) He claims that, due to his Asperger's, he was afraid for his safety and worried that he would be jailed. (*Id.* ¶ 18.) Plaintiff proceeded to the Office for Students with Disabilities, where he stayed until his parents arrived. (*Id.* ¶ 19.) He then left the orientation. (*Id.* ¶ 20.)

### b. Issuance of No Contact Orders

Later that same day, Plaintiff received a call from Defendant Stammer, SUNY Purchase's Conduct Officer for Community Standards. (*Id.* ¶¶ 5, 21.) Stammer advised Plaintiff that three of the female students involved in the incident filed do not contact orders against him and sent Plaintiff emails of the no contact orders (the "NCOs"). (*Id.* ¶¶ 21, 29.) The individuals who requested the NCOs were Horsfield, Newman, and a third student, Casey O'Riordan ("O'Riordan"). (*Id.* ¶ 22.) Plaintiff alleges he has never met, and therefore could not recognize, O'Riordan. (*Id.* ¶ 23.) Additionally, Plaintiff alleges that the fact that NCOs were issued against him was posted on a community online chat room. (*Id.* ¶ 24.)

### c. SUNY Purchase's Policies and Procedures Regarding No Contact Orders

In or about August 2017, SUNY Purchase's website stated the following regarding NCOs that it may issue:

> In cases involving allegations of sexual misconduct, sex discrimination, domestic violence, dating violence, and/or stalking, when the accused is a student, the college may issue a "No Contact Order," meaning that attempts to contact the complainant is a violation of college policy subject to additional conduct charges. Additionally, if the accused and complainant observe each other in a public place, it is the responsibility of the accused to leave the area immediately and without directly contacting the complainant.

(*Id.* ¶ 28.)

3

The copies of the NCOs provided to Plaintiff included an email address and phone number to contact the Office of Community Standards should Plaintiff "have any questions about a No Contact order or wish to have [sic] review of the terms of the No Contact Order." (*Id.* ¶ 29.) At the time the NCOs were filed against Plaintiff, SUNY Purchase did not have any process for challenging their issuance. (*Id.* ¶¶ 26, 30.) Moreover, SUNY Purchase did not require any factual assertion for the issuance of NCOs, and no reason was given for why they were issued against Plaintiff. (*Id.* ¶¶ 27, 30.) Plaintiff further states that no complaints were filed alleging that Doherty had violated the Code of Conduct or engaged in any other wrongful conduct, and the campus police did not file any charges against, or make factual inquiries of, Plaintiff. (*Id.* ¶ 31.)

### d. Subsequent Events Regarding the No Contact Orders

Plaintiff requested review of the NCOs and asserted his belief that that, through their issuance, SUNY Purchase discriminated against him because of his disability. (*Id.* ¶ 32.) In response, Defendant Balascio, Associate Dean for Student Affairs, and Defendant Bice, Dean of Student Affairs, informed him that: (1) SUNY Purchase's process was followed with the issuance of the NCOs; (2) he was not entitled to challenge or contest their issuance; and (3) SUNY Purchase would not vacate the NCOs. (*Id.* ¶¶ 4, 6, 33.)

Subsequent to the issuance of NCOs against Plaintiff, SUNY Purchase adopted rules and procedures governing the NCO process. (Am. Compl. ¶ 35.) These new rules and procedures were not applied to Plaintiff, and his request to remove the NCOs from his file and for their dismissal was unsuccessful. (*Id.* ¶ 36.)

Plaintiff claims that he suffers from anxiety and depression due to the NCOs and his disability, and that he therefore finds it difficult to attend class, utilize SUNY Purchase's facilities, and socialize with other students. (*Id*. ¶ 34.) Moreover, Plaintiff alleges that his ability to perform

4

academically is now disrupted because he attends a class with one of the students to whom the NCO applies. (*Id.* ¶ 49.)

## II.     Procedural Background

Plaintiff Jason Doherty ("Plaintiff" or "Doherty") commenced the instant action on November 21, 2018. (*See* Complaint, ECF No. 1; Amended Complaint ("Am. Compl."), ECF No. 17.) He alleged claims pursuant to 42 U.S.C. § 1983 for violations of the Fourteenth Amendment to the United States Constitution and the ADA against Defendants Bice, Stammer, and Balascio. (*Id.*) Specifically, Plaintiff alleged that Defendants denied him due process in relation to the issuance of no contact orders and failed to comply with the disability accommodation and antidiscrimination requirements of the ADA. (*Id.*)

On November 29, 2019, Defendants moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* ECF No. 29.) The Court granted in part and denied in part Defendants' motion to dismiss— whereas Plaintiff's due process claims, ADA claims against Defendants in their individual capacities, and claim for injunctive relief against Defendant Stammer were dismissed with prejudice, Plaintiff's ADA claim for monetary relief against Defendant Stammer in his official capacity and ADA claims for monetary and equitable relief against Defendants Bice and Balascio in their official capacities survived. (ECF No. 37.)

Following the initiation of discovery, the Court stayed discovery and permitted Defendants to again move for an order dismissing Plaintiff's ADA claims for monetary and equitable relief against Defendants Stammer, Bice, and Balascio in their official capacities pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(c). (ECF No. 80.) Defendants filed the instant motion for an order dismissing these claims on September 30, 2022, and the parties filed their

5

respective papers in support of, and in opposition to, Defendants' Motion that same day. (ECF Nos. 84-91.) Defendants' Motion is now before the Court.

## LEGAL STANDARD

### I. Federal Rules of Civil Procedure 12(c) ("Rule 12(c)") and 12(b)(6) ("Rule 12(b)(6)")

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). The standard for analyzing a motion for judgment on the pleadings under Rule 12(c) is identical to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir.2006); *see also* Fed.R.Civ.P. 12(b)(6). Thus, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir.2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

In ruling on a motion to dismiss, a "court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir.2010) (internal quotation and citation omitted). Courts may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993).

### II. Rule 12(c) and Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)")

"Where a Rule 12(c) motion asserts that a court lacks subject matter jurisdiction, the motion is governed by the same standard that applies to a Rule 12(b)(1) motion." *Cruz v. AAA Carting &*

*Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 239 (S.D.N.Y. 2015). Accordingly, "[a]s the party seeking to invoke the subject matter jurisdiction of the district court, the plaintiff bears the burden of demonstrating by a preponderance of the evidence that there is subject matter jurisdiction in the case." *Eugenia VI Venture Holdings, Ltd. v. Surinder Chabra*, 419 F. Supp. 2d 502, 505 (S.D.N.Y. 2005). The Court "may resolve disputed jurisdictional facts by referring to evidence outside the pleadings." *Id.* Additionally, a Court may determine whether it lacks subject matter jurisdiction at any time. *See Lydonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir.2000) ("Unlike failure of personal jurisdiction, failure of subject matter jurisdiction is not waivable and may be raised at any time ... by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed."); *accord* Fed.R.Civ.P. 12(h)(3).

## DISCUSSION

The Court previously concluded that Plaintiff's claim under Title II of the ADA, 42 U.S.C. § 12132, for disability discrimination should survive Defendants' earlier motion to dismiss. (Am. Compl. ¶¶ 41–55). Here, for the second time, Defendant requests that the Court dismiss Plaintiff's ADA claims for equitable and monetary relief. The Court addresses the parties' arguments on each of these claims *infra*.

### I. Plaintiff's ADA claim for equitable relief against Defendants Bice and Balascio is moot.

Defendants argue that the Court should dismiss Plaintiff's claim for equitable relief against Defendants Bice and Balascio because Plaintiff is no longer a student, the NCOs have expired, and the record does not indicate that Plaintiff continues to suffer harm from the NCOs. (ECF No. 85, at 10-12.) Plaintiff counters that his claim for equitable relief is not moot because his permanent

7

record includes the NCOs, which may impact his ability to pursue further education and obtain employment. (ECF No. 88, at 12-13.)

The Court agrees with Defendants. It is well settled that claims for equitable relief against university actions are moot for students who graduate from their university, as redress becomes unavailable to them upon their departure. *See Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir.1994) (injunctive claims are moot for university students who graduate because no redress is available); *see also Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir.1993) (citations omitted) (equitable claims against university mooted by the graduation of plaintiffs); *Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x 88, 90 (2d Cir. 2011) ("Because [Plaintiff] is now graduated from medical school, received his M.D., and is participating in (or has already completed) a pediatrics residency program, his claim for injunctive relief is moot."); *Alston v. Coughlin*, 109 F.R.D. 609, 612 (S.D.N.Y.1986) ("The mootness doctrine is an elemental limitation on federal judicial power, and its effect may not be waived by a party."). Although Plaintiff argues that the Court should still declare the NCOs vacated and void because they may impact his future professional and educational prospects, the Court struggles to understand how such harm could occur where, as here, the NCOs are no longer in effect, are not reflected on Plaintiff's permanent academic record, are not disciplinary actions, and are not shared with other universities or prospective employers. (*See* ECF No. 86, at 1; ECF No. 91, at 1-2.) Accordingly, Plaintiff's ADA claim is dismissed as moot.

8

**II.     Plaintiff's ADA claim for monetary relief against Defendants Stammer, Bice, and Balascio is dismissed because emotional damages are not available under Title II of the ADA.**

Defendants argue that the Court should dismiss Plaintiff's ADA claim for monetary relief against Defendants Stammer, Bice, and Balascio because Plaintiff only seeks emotional distress damages pursuant to Title II of the ADA, and recent United States Supreme Court precedent established that emotional damages are not available for this type of claim. (ECF No. 85, at 10-12.) Plaintiff, however, argues that he suffered additional damages that are analogous to breach of contract damages because he was denied the benefit of his tuition— specifically, he claims that the NCOs prevented him from fully utilizing Purchase's facilities. (ECF No. 90, at 10.) Thus, the parties raise two issues: (1) whether Plaintiff only seeks monetary damages for emotional distress, rather than also for breach of contract; and (2) if Plaintiff only seeks monetary damages for emotional distress, whether Plaintiff's ADA claim for monetary relief is not available.

*i.     Plaintiff only seeks monetary damages for the emotional distress he allegedly experienced due to the NCOs.*

As noted *supra*, Plaintiff argues that he suffered damages not only because he experienced severe emotional distress due to the NCOs, but also because the NCOs made it "difficult[] [for him to] avail[] himself of the facilities at Purchase." (ECF No. 17 ¶¶ 47-55.) Plaintiff thereby claims that he "suffered damages that are analogous to breach of contract damages because he was denied the benefit of what he paid tuition for." (ECF No. 6, at 15.) This argument, however, fails to convincingly reframe Plaintiff's emotional damages claim as a claim for contractual damages. Plaintiff has not explicitly advanced a breach of contract claim, alleged that a specific contract existed, or offered evidence of economic damages. (*See Am. Compl.*) Therefore, he cannot credibly

9

assert in his opposition brief (and for the first time in this litigation) that he "suffered damages that are analogous to breach of contract damages," particularly as he found it difficult to use the Purchase facilities precisely because of his emotional distress. *See Smith v. NBC Universal*, 524 F. Supp. 2d 315, 330 (S.D.N.Y. 2007) (noting that the plaintiff only "appeared" to assert a claim for economic damages, and did not actually do so, because he "[did] not offer[] any evidence as to what this damage might be").

> ii. *Because Plaintiff has only advanced an ADA claim for monetary damages based on emotional distress, his claim is barred.*

As noted *supra*, Defendants argue that the Court should dismiss Plaintiff's ADA claim for monetary damages because Title II of the ADA does not permit recovery of monetary damages for mental or emotional distress. (ECF No. 90, at 5-7.) Defendants point to the United States Supreme Court decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, U.S., 142 S. Ct. 1562, 212 L.Ed.2d 552 (2022) to support their argument.

In *Cummings*, the Supreme Court considered whether emotional distress damages are recoverable in actions arising under the Rehabilitation Act and the Patient Protection and Affordable Care Act (the "ACA"). *Cummings*, 142 S. Ct. at 1569. First, the Court identified "four statutes prohibiting recipients of federal financial assistance from discriminating based on certain protected grounds," which were enacted pursuant to Congress's Spending Clause power: Title VI of the Civil Rights Act of 1964; Title IX of the Education Amendments of 1972; the Rehabilitation Act; and the ACA. *Id.* The Court then expounded that any determination as to these statutes' available remedies "must be informed by the way Spending Clause 'statutes operate': by 'conditioning an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds.'" *Id.* at 1570

10

(quoting *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 286, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998)). Finally, the Court recognized that "the legitimacy of Congress' power to enact Spending Clause legislation rests not on its sovereign authority to enact binding laws, but on whether the recipient voluntarily and knowingly accepts the terms of that 'contract.'" *Id.* (quotation and alteration marks changed). This analogy to the common law of contracts thereby "limits the scope of available remedies in actions brought to enforce Spending Clause statutes." *Id.* (quotation omitted).

Within this context, to determine whether emotional distress damages are available under the Rehabilitation Act and the ACA, the *Cummings* Court asked, "[w]ould a prospective funding recipient, at the time it engaged in the process of deciding whether to accept federal dollars, have been aware that it would face such liability?" *Id.* at 1570–71 (quotation omitted and alteration marks changed). Reasoning that emotional distress damages are not commonly compensable in contract law, the Supreme Court found no precedential basis "to conclude that federal funding recipients have clear notice that they would face such a remedy in private actions brought to enforce" the Spending Clause statutes. *Id.* at 1571-76 (quotation and citation omitted). Accordingly, the Court found that "emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes" addressed in its opinion. *Id.*

Although Defendants argue that, following the Court's decision in *Cummings*, emotional distress damages are not available for a claim alleging a violation of Title II of the ADA (ECF No. 90, at 6), Plaintiff claims that: (1) the Supreme Court did not address the recovery of damages under other discrimination statutes such as the ADA; and (2) applying the limitation of contract damages pertaining to emotional distress claims is illogical for generally applicable anti-discrimination laws like the ADA. (ECF No. 88, at 6-7.)

11

The Court agrees with Defendants. Significantly, the ADA expressly incorporates the remedies promulgated in the Rehabilitation Act, providing that "[t]he remedies, procedures, and rights set forth in [§ 505(a)(2) of the Rehabilitation Act] shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability." 42 U.S.C. § 12133 (emphasis added). It thereby follows that emotional distress damages are not available under the ADA if, as the *Cummings* Court established, they are not available under the Rehabilitation Act. *Cummings*, 142 S. Ct. at 1576. Indeed, all other federal courts that have apparently considered this issue have likewise found that emotional distress damages are not available under the ADA because, as the *Cummings* Court concluded, they are not available under the Rehabilitation Act. *See Montgomery v. District of Columbia*, No. CV 18-1928 (JDB), 2022 WL 1618741, at *24 (D.D.C. May 23, 2022) ("[I]f a certain category of damages is not available under [the Rehabilitation Act], it is not available under Title II [of the ADA] either."); *Pennington v. Flora Cmty. Unit Sch. Dist.* No. 35, No. 3:20-cv-11-MAB, 2023 WL 348320, at *2 (S.D. Ill. Jan. 20, 2023) ("Because Title II of the ADA incorporates the remedies set forth in the [Rehabilitation Act] ... it therefore follows that emotional distress damages are also not available in suits brought under the ADA."); *A.T. v. Oley Valley Sch. Dist.*, No. CV 17-4983, 2023 WL 1453143, at *3 (E.D. Pa. Feb. 1, 2023) (finding that emotional distress damages are not available under Title II of the ADA); *Williams v. Colorado Dep't of Corr.*, No. 21-CV-02595-NYW-NRN, 2023 WL 3585210, at *4–6 (D. Colo. May 22, 2023) (recognizing that federal district courts "have seemingly unanimously concluded that, post-*Cummings*, emotional distress damages are not recoverable under Title II of the ADA"). Thus, since emotional distress damages are not recoverable under Title II of the ADA, and Plaintiff only requests emotional distress damages, the Court dismisses his claim for monetary relief pursuant to Title II of the ADA with prejudice.

Case 7:18-cv-10898-NSR-AEK   Document 541   Filed 08/09/23   Page 12 of 13

## CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED. Plaintiff's ADA claim for monetary relief against Defendant Stammer in his official capacity and ADA claims for monetary and equitable relief against Defendants Bice and Balascio in their official capacities are dismissed with prejudice— this opinion represents the second occasion on which the Court considered these claims under the Rule 12(b)(6) standard and Plaintiff's ADA claims for equitable and monetary relief are, respectively, moot, and unavailable.

Accordingly, the Clerk of the Court is respectfully directed to terminate Defendants' Motion at ECF No. 84, and to close this action.

Dated: August 9, 2023　　　　　　　　　　　　　　SO ORDERED:
　　　　　White Plains, New York

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　NELSON S. ROMÁN
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

13